2004 UT 80

Edward George GOEBEL and Kathy Goebel, Plaintiffs, Appellants, and Cross–Appellees,

v.

SALT LAKE CITY SOUTHERN RAIL-ROAD COMPANY, Salt Lake City Corporation, Inc., Omni Products, Inc., Union Pacific Railroad Company, Utah Transit District, Defendants, Appellees, and Cross–Appellants.

No. 20020825.

Supreme Court of Utah.

Oct. 1, 2004.

Rehearing Denied Jan. 20, 2005.

Peter C. Collins, Salt Lake, for plaintiffs.

E. Scott Savage, Casey K. McGarvey, Martha S. Stonebrook, Salt Lake, for defendants.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 Plaintiffs-appellants Edward and Kathy Goebel (the Goebels) appeal a grant of directed verdict and other rulings in favor of defendant-appellee Salt Lake City Southern Railroad Company, Inc. (Southern), and a grant of summary judgment in favor of Salt Lake City Corporation (the City). In brief, the Goebels argue that the trial court committed reversible error by:

(1) ruling that, as a matter of law, a certain roadway obstacle could not have been a proximate cause of Mr. Goebel's injuries;

(2) ruling that the Goebels were required to give Southern actual or constructive notice of their claim in order to survive Southern's motion for a directed verdict, despite a duty imposed upon Southern by Utah Code sections 10–7–26(2), 10–7–29, and 56–1–11, and Salt Lake City Code § 14.44.030, and that they had failed to adduce evidence from which a reasonable jury could find that Southern had such notice;

(3) failing to find that notice could be "presumed" in this case based on the alleged "permanence" of a dangerous condition;

(4) failing to find that evidence of the indeterminate length of time that the dangerous condition may have existed could support a jury finding that Southern had constructive notice of the condition;

(5) finding that notice is required in a statute-based public nuisance claim under Utah Code section 76–10–803;

(6) finding that an agreement between Union Pacific Railroad Company (Union Pacific) and Southern did not impose on Southern a duty of care toward Mr. Goebel;

(7) excluding an expert witness's empirical testing evidence from trial; and

(8) retroactively applying amended notice of claim requirements of the Governmental Immunity Act with respect to the Goebels' claims against Salt Lake City.

¶ 2 Southern cross-appeals, arguing that the trial court erred in ruling that Utah Code sections 10–7–26, 10–7–29, and 56–1–11, and Salt Lake City Code § 14.44.030 apply to Southern.

¶ 3 We affirm.

## FACTUAL BACKGROUND

¶ 4 On February 19, 1998, Mr. Goebel was riding his bicycle on 1700 South Street over a railroad crossing near 200 West Street when he crashed, sustaining serious injuries. The Goebels' theory about what caused the accident focused partly on the rubber mats, called "field panels," that were a component of the crossing. The Goebels therefore brought suit against Omni Products, Inc., because its predecessor had manufactured the field panels. Additionally, the Goebels sued Union Pacific, which had installed the field panels, and Utah Transit Authority (UTA), which owned the rail line and crossing. The Goebels settled with each of these defendants before trial, and none of them are parties to this appeal. The remaining defendants who are parties to this appeal are Southern, which was using UTA's crossing for freight service pursuant to an easement, and the City, which was responsible for maintaining the street leading up to the crossing.

¶ 5 The tracks at the crossing had been owned by Union Pacific, but Union Pacific sold the tracks to UTA prior to Mr. Goebel's accident. Southern was formed in 1992 to continue freight service on the tracks, while UTA took on the passenger service. When Union Pacific sold the tracks to UTA, it retained a limited easement for the purpose of freight service, which it then immediately transferred to Southern. Southern then entered into an Administration and Coordination Agreement (Agreement) with UTA. The Agreement specified that Southern could run freight trains on tracks that UTA designated as "Freight Trackage." Thus, UTA owned the tracks, and Southern had an easement to use the tracks for freight purposes, subject to the terms of the Agreement. The Agreement required Southern to maintain freight trackage crossings as necessary for freight rail service.

¶ 6 At trial, the Goebels attempted to present evidence supporting their theory that a "protuberance"—the Goebels' term—in the road caused Mr. Goebel to steer his bicycle into a gap between field panels at the crossing. The field panels raised the level of the roadway almost to the level of the rails. The field panels were laid next to each other, but over time, the Goebels theorized, a gap running parallel to Mr. Goebel's direction of travel grew between two of the field panels. The Goebels theorized that Mr. Goebel's accident occurred because the front tire of Mr. Goebel's bicycle—a road bicycle with relatively narrow wheels and tires—entered the gap and jammed against one of the rails.

¶ 7 Notwithstanding the Goebels' theories, however, no witnesses actually saw, and Mr. Goebel cannot actually remember, what caused the accident. Southern presented evidence to support its competing theory of what caused Mr. Goebel's accident. According to Southern's theory, the gap was not even involved in Mr. Goebel's accident.

¶ 8 In an order dated July 8, 2002, the trial court granted the City's motion for summary judgment. The court granted in part Southern's motion for a directed verdict in an order dated August 29, 2002. The court's factual findings and legal conclusions as related to these orders are presented as relevant below.

## ANALYSIS

### I. THE DIRECTED VERDICT

¶ 9 The Goebels' first and most significant argument is that the trial court erred in granting Southern's motion for directed verdict because: (1) there was evidence present-

ed at trial from which a jury could conclude that Southern had constructive notice of the protuberance, that it had a duty to fix the protuberance, and that its failure to fix the protuberance proximately caused Mr. Goebel to crash; (2) the Goebels did not need to present evidence that Southern had notice, because state law imposes an affirmative duty to maintain the crossing; (3) pursuant to *Schnuphase v. Storehouse Markets*, 918 P.2d 476 (Utah 1996), Southern should be presumed to have had notice because the gap was a permanent unsafe condition in a crossing for which Southern was responsible; (4) the jury could have inferred that Southern had constructive notice of the gap from evidence that gaps often form gradually over time; and (5) notice was not required as an element of the Goebels' public nuisance claim.

¶ 10 We review a trial court's grant of directed verdict for correctness. For a directed verdict to be appropriate, the evidence must be such that reasonable minds could not differ on the facts based on the evidence presented at trial. *Mgmt. Comm. of Graystone Pines Homeowners Ass'n v. Graystone Pines, Inc.*, 652 P.2d 896, 897–98 (Utah 1982). We examine the evidence in the light most favorable to the losing party, and if that evidence and the reasonable inferences drawn therefrom would support a judgment in favor of the losing party, we must reverse. *Id.* If evidence raises a "question of material fact," it is reversible error for a trial court to grant a motion for directed verdict. *See Mahmood v. Ross*, 1999 UT 104, ¶ 16, 990 P.2d 933.

### A. The Significance of the Protuberance

¶ 11 The Goebels take issue with the trial court's finding that the protuberance was not a proximate cause of Mr. Goebel's damages, and further argue that Southern had both constructive notice of the existence of the protuberance and a duty to repair it. The trial court found that, "as a matter of law, the protuberance is not a proximate cause of [Mr. Goebel's] injuries.... It may

very well be a factor in this accident, but ... no dangerous gap, no accident. The dangerous gap is the proximate cause of the injuries [of] which plaintiff complains."

¶ 12 Proximate cause is an issue of fact and is, therefore, not typically resolved by the court in a jury trial. *See Mackay v. 7–Eleven Sales Corp.*, 2000 UT 15, ¶ 12, 995 P.2d 1233. It is legal error for a court to grant a directed verdict on the issue of causation unless there is no evidence from which a reasonable jury might conclude that a breach of a duty proximately caused the plaintiff's injury. *See Mahmood*, 1999 UT 104 at ¶ 21, 990 P.2d 933. Put another way, if there is any doubt about whether something was a proximate cause of the plaintiff's injuries, the court must not decide the issue as a matter of law. *See Rees v. Albertson's, Inc.*, 587 P.2d 130, 133 (Utah 1978).

¶ 13 According to the Goebels' theory of the case, it was the gap that actually caused Mr. Goebel to fall, and the trial court did find that the gap was the proximate cause of the accident. Mr. Goebel argues that he steered his front wheel into the gap because he was avoiding the protuberance, but this does not mean that the existence of the protuberance necessarily forced Mr. Goebel to steer into the gap. From the evidence presented, no reasonable jury could find that the protuberance proximately caused Mr. Goebel to steer into the gap. The protuberance was no more a cause of Mr. Goebel's accident than his decision to ride his bicycle that day, or the weather. After reviewing the evidence, we agree with the trial court and Southern that Mr. Goebel could have steered his bicycle into the gap regardless of whether the protuberance existed at all. The trial court was therefore correct in finding as a matter of law that the protuberance was not a proximate cause of the accident.

### B. Whether Notice Is Required Where Statutes Impose an Affirmative Duty

¶ 14 Building upon the trial court's ruling that Southern is a "railway company"

that owed the Goebels a duty of care pursuant to Utah Code sections 10–7–26(2), 10–7–29, and 56–1–11, and Salt Lake City Code section 14.44.030, the Goebels argue that where the duty owed is based upon these statutes, no showing of notice is required, and the trial court therefore erred in granting the motion for directed verdict for failure to prove notice. Southern argues that these statutes do not apply to Southern because it is not a "railway company" within the meaning of the statutes, and that even if they do apply, they do not require Southern to take action without prior notice of the need to do so.

¶ 15 The relevant portion of Utah Code section 10–7–26(2) provides that nothing in this section or in other sections to which it refers is to be construed as exempting

> any railway company from keeping every portion of every street and alley used by it and upon or across which tracks shall be constructed at or near the grade of such streets in good and safe condition for public travel, but it shall keep the same planked, paved, macadamized or otherwise in such condition for public travel as the governing body of the city or town may from time to time direct.

Utah Code Ann. § 10–7–26(2) (2003). "Railway company" is defined as "any company which owns or operates railway tracks on, along or across a street or alley in any city or town." *Id.* § 10–7–26(1). Utah Code section 10–7–29 provides, in pertinent part, that

> [t]he tracks of all railway companies when located upon the streets or avenues of a city or town shall be kept in repair and safe in all respects for the use of the traveling public, and such companies shall be liable for all damages resulting by reason of neglect to keep such tracks in repair.... For injuries to persons or property arising from the failure of any such company to keep its tracks in proper repair ... such company shall be liable and the city or town shall be exempt from liability.

*Id.* § 10–7–29 (2003). For purposes of this section, a "railway company" is defined both as "any company which owns or operates railway tracks," *id.* § 10–7–26(1), and as any company "owning or operating any ... railway, " *Id.* § 10–7–29. Utah Code section 56–1–11 states that "[e]very railroad company shall be liable for damages caused by its neglect to make and maintain good and sufficient crossings at points where any line of travel crosses its road." *Id.* § 56–1–11 (2000). Salt Lake City Code section 14.44.030 requires "railway compan[ies]" to keep portions of streets "across which their tracks ... are constructed and maintained" in good and safe condition for public travel. Salt Lake City, Utah, Code § 14.44.030 (1987).

¶ 16 Southern argues that the trial court erred in finding Southern owed a statutory duty of care to the Goebels because while Southern does operate rolling stock upon the railroad tracks, only UTA actually owns and operates the railroad tracks. We agree with the Goebels and the trial court that these statutes, by their plain language, imposed a duty upon Southern to keep the crossing safe for the traveling public. Although Southern's operation of the railroad tracks in question is limited to freight service pursuant to the easement, and is governed by the Agreement, Southern is nonetheless a railroad company operating a "railway" within the meaning of the statutes, because it operates trains upon the railroad tracks. According to the Agreement, Southern has the "exclusive authority to manage, direct and control all railroad and railroad-related operations on" the tracks designated for freight use, and has "exclusive authority to control operations of all trains, locomotives, railcars and rail equipment and the movement and speed of the same." As the trial court explained, the " 'operating a railway' language ... is broad enough to encompass Southern's operation, use and utilization of the easement that they had supported by the evidence in this particular case." Only different statutory language or different factual circumstances could convince us that Southern's regular and longstanding use and control of trains on the railway did not amount to operation of a railway. The trial court therefore correctly interpreted the statutes in this regard.

¶ 17 While we agree that Southern owed a duty to the Goebels, however, that does not mean that the statutes obviate the need for the Goebels to show notice. The essence of the Goebels' argument on this point is simply the observation that the statutes do not mention a notice requirement. However, the mere fact that the statutes do not mention notice does not mean that negligence could be found in the absence of notice. As the Goebels themselves acknowledge, it is negligence law—not strict liability—that provides the foundation for liability under these statutes. *See Oswald v. Utah Light & Ry. Co.*, 39 Utah 245, 117 P. 46, 47 (1911) (explaining in negligence case involving streetcar company that "the omission or commission of something in violation of a valid statute, or of any ordinance reasonable in its terms, is negligence, or evidence of negligence"); Eugene McQuillin, *The Law of Municipal Corporations* § 24.721 (3d ed. 2002) ("Generally, violations by a railroad of its duty under an ordinance with respect to crossing constitutes, or at least gives evidence of, actionable negligence."). Because, as we discuss in detail below, notice is a fundamental component of the negligence equation in such cases as this one, the trial court correctly found that the duty imposed by the statutes does not give rise to liability in the absence of notice.

*C. Whether Notice Can Be Presumed from the "Permanent" Nature of the Gap*

¶ 18 Citing a "long line of cases in Utah" that includes *Schnuphase v. Storehouse Markets*, 918 P.2d 476 (Utah 1996), the trial court held that notice was required to establish negligence in this case. Furthermore, the court found, after evaluating the evidence presented in the light most favorable to the Goebels, that the Goebels had presented

> no competent evidence that [1] a dangerous gap existed prior to the accident or that [2] a dangerous gap existed for a period of time sufficient to allow Southern to discover it and a sufficient amount of time for Southern to remedy it. . . . [T]he best . . . the evidence establishes . . . is that dangerous gaps develop over time.

> In this court's view, that does not constitute competent evidence to allow the jury to make a reasonable inference as to how long it existed prior to the accident or when it existed prior to the accident. If you can't establish duration, [and] you can't establish when it existed, it appears to me that only through speculation can the jury attempt to reach those conclusions in an effort to determine whether or not there was sufficient time to impart notice and sufficient time to remedy.

The Goebels argue that the gap was "permanent," and that under *Schnuphase*, this permanence creates a presumption that Southern knew about the gap. Thus, while the trial court interpreted *Schnuphase* as requiring evidence of actual or constructive notice, the Goebels interpret *Schnuphase* as creating a presumption of notice.

¶ 19 In *Schnuphase*, the plaintiff was a business invitee in a grocery store who slipped and fell on a scoop of ice cream dropped by another customer. 918 P.2d at 477. Discussing store owners' duty of reasonable care in slip and fall cases, we quoted a previous decision, *Allen v. Federated Dairy Farms, Inc.*, 538 P.2d 175 (Utah 1975), identifying two classes of such cases. *See Schnuphase*, 918 P.2d at 478. The first class, to which *Schnuphase* belonged, was that involving temporary unsafe conditions. *Id.* Cases in this class, we explained, require actual or constructive notice for liability to attach:

> [I]t is quite universally held that fault cannot be imputed to the defendant so that liability results therefrom unless two conditions are met: (A) that he had knowledge of the condition, that is, either actual knowledge, or constructive knowledge because the condition had existed long enough that he should have discovered it; and (B) that after such knowledge, sufficient time elapsed that in the exercise of reasonable care he should have remedied it.

*Id.* (quoting *Allen,* 538 P.2d at 176). The second class of cases, however,

> involves some unsafe condition of a permanent nature, such as: in the structure of the building, or of a stairway, etc. or in equipment or machinery, or in the manner of use, which was created or chosen by the defendant (or his agents), or for which he is responsible. In such circumstances, where the defendant either created the condition, or is responsible for it, he is deemed to know of the condition; and no further proof of notice is necessary.

*Id.* (quoting *Allen,* 538 P.2d at 176). While the trial court believed this case falls into the first category of cases requiring notice, the Goebels argue that the gap was an "unsafe condition of a permanent nature," to which Southern was "responsible." Therefore, the Goebels reason, the instant case falls within the second class of cases, requiring no showing of notice.

¶ 20 We conclude, however, that the instant case does not fall within the no-notice category of cases that we articulated in *Allen* and *Schnuphase* because here, the defendant did not create the unsafe condition, and is "responsible" for it only in the context of maintenance, not for its existence in the first place. Instead, this case is analogous to *Fishbaugh v. Utah Power & Light,* 969 P.2d 403 (Utah 1998), where we found that a plaintiff's failure to present evidence of notice and opportunity to remedy was fatal to his case. The plaintiff in *Fishbaugh* had been crossing a street at night when he was hit by a car. *Id.* None of the streetlights were functioning. Consequently, in addition to suing the driver of the car, the plaintiff sued the power company for negligently failing to maintain or operate the streetlights. *Id.* The plaintiff also sued the city, claiming that the street was in a dangerous condition, and that the city had negligently failed to repair the lights even though it knew about the lighting problem before the accident. *Id.* The city and the power company both moved for summary judgment, based partly on their argument that they "had no notice of the outage prior to the accident and thus could not be held

negligent." *Id.* A key issue on appeal was whether the trial court erred in granting summary judgment to the defendants on the ground that there was no evidence of either actual or constructive notice and, therefore, no negligence. *Id.* at 405. We expressly applied the rule we articulated in *Schnuphase,* requiring evidence of both notice and sufficient time in which to remedy the dangerous condition. *Id.* at 407. As a result, we affirmed the grant of summary judgment, reasoning that even if there was evidence that the defendants had notice of the dangerous condition of the streetlights at some indeterminate time before the accident, "there is no evidence indicating *how long* UP & L had such notice. Without any evidence to that effect, Fishbaugh cannot prove that the City and UP & L failed to repair the streetlights within a reasonable time after receiving notice and that they were thus negligent in maintaining the streetlights." *Id.* at 408 (emphasis added).

¶ 21 As in *Fishbaugh,* the proximate cause of Mr. Goebel's injury was the breakdown or mechanical degradation of something that was not alleged to have been negligently created or installed. As in *Fishbaugh,* therefore, this case falls into the category of negligence cases requiring evidence that the defendant had some kind of notice of the dangerous condition, together with evidence that the defendant had that notice for a time sufficient for it to repair the condition. In *Fishbaugh,* there was evidence that the defendants may have indeed had notice, but evidence was lacking regarding the length of time that they had such notice. *Id.* In the instant case, however, there is no evidence of notice, let alone evidence of how long Southern may have had that notice.

¶ 22 If a plaintiff alleges that a defendant negligently failed to remedy a dangerous condition that the defendant did not create (as in *Schnuphase* ), negligently failed to repair a dangerous malfunction in an otherwise safe system (as in *Fishbaugh* ), or negligently allowed an otherwise safe condition to degrade over time into a dangerous

condition (as in the instant case), then evidence of notice and a reasonable time to remedy are required to survive a motion for summary judgment or directed verdict. These requirements do not apply where the negligence claim requires the plaintiff to establish that the defendant actually created the dangerous condition or purposefully built the dangerous condition into the system for which the defendant is responsible. The rationale behind these distinct rules is that it is reasonable to presume that a party has notice of conditions that the party itself creates, but it is not reasonable to presume notice of conditions that someone else creates (as in *Schnuphase*), that arise from malfunctions (as in *Fishbaugh*), or that gradually evolve on their own.

¶ 23 The Goebels tried to establish constructive notice by arguing that Southern only lacked actual notice of the gap because it failed to perform reasonable inspections of the crossing. The evidence at trial showed, however, not only that the crossing was regularly inspected, but also that Mr. Goebel and Mr. Goebel's bicycling expert, Charles Collins, both of whom had used the crossing numerous times before the accident and should thus have been highly attuned to potential bicycle safety issues in the crossing, failed to notice the gap. In that regard, this case is comparable to *Maloney v. Salt Lake City*, 1 Utah 2d 72, 262 P.2d 281 (1953). In *Maloney*, the plaintiff alleged that Salt Lake City had negligently maintained a sidewalk that collapsed while he was on it. *Id.* at 282. We affirmed a directed verdict in favor of the city, emphasizing that the plaintiff was unable to show that the sidewalk was in a defective condition before the collapse, even though the plaintiff himself had used the sidewalk many times prior to the accident. *Id.* In this case, the Goebels failed as a matter of law to establish constructive notice because reasonable minds could not differ regarding whether Southern should have noticed the gap. The trial court therefore rightly found that no reasonable jury could have found that Southern had constructive notice based on the failure to reasonably inspect.

### D. Whether the Length of Time the Gap Could Have Existed Created Constructive Notice

¶ 24 The Goebels also argue that the gap must have evolved gradually over time, and that Southern would therefore have noticed it if Southern had been paying proper attention. Therefore, the Goebels assert, the jury could have found that Southern should have known it existed long enough to have a reasonable time in which to repair it. The Goebels cite no case law to support this proposition, aside from one case that states generally that jurors can "make justifiable inferences from circumstantial evidence to find negligence." *Lindsay v. Gibbons & Reed*, 27 Utah 2d 419, 497 P.2d 28, 31 (1972).

¶ 25 First, contrary to the Goebels' assertions, the evidence presented did not incontrovertibly prove that the gap must have evolved gradually over time. In fact, there was evidence that the gap may have formed suddenly by being scraped or struck by, for example, a snow plow. More importantly, however, even if the gap had existed for a very long time, there is no reason to believe that Southern should have noticed it. As we have already explained, there was no evidence from which a reasonable jury could conclude that Southern failed to reasonably inspect the crossing. *See supra* Part I.C. Moreover, even if Southern had notice of the gap for some time prior to the accident, the Goebels have offered absolutely no evidence from which a jury could infer the length of time that Southern had such notice. Therefore, not only would the jury have to speculate about whether Southern had notice of the dangerous gap in the first place, it would also have to speculate about whether Southern had that notice far enough in advance to repair the gap before Mr. Goebel's accident. Given our explicit ruling in *Fishbaugh* that a plaintiff in this kind of case must present evidence of the length of time that the defendant had notice, the Goebels' mere hypothesis that the gap may have existed for some unknown length of time does not suffice.

### E. Whether Notice Is Required Under the Goebels' Public Nuisance Claim

¶ 26 The Goebels' final argument for why the trial court erred in granting

Southern's motion for a directed verdict is that proof of notice was not required for their public nuisance claim, which was based on Utah Code section 76–10–803. The version of section 76–10–803 in effect in 1998, when the accident occurred, read in pertinent part as follows:

(1) A public nuisance is a crime against the order and economy of the state and consists in unlawfully doing any act or omitting to perform any duty, which act or omission:

(a) annoys, injures, or endangers the comfort, repose, health, or safety of three or more persons;

. . .

(c) unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, any . . . street or highway; [or]

. . .

(e) in any way renders three or more persons insecure in life or the use of property.

(2) An act which affects three or more persons in any of the ways specified in this section is still a nuisance regardless of the extent [to which the] annoyance or damage inflicted on individuals is unequal.

Utah Code Ann. § 76–10–803 (1995). In a lengthy and detailed analysis of this statute, the court of appeals has interpreted section 76–10–803 to mean that a plaintiff "must demonstrate that defendant's conduct was unreasonable in order to recover." *Erickson v. Sorensen*, 877 P.2d 144, 147–49 (Utah Ct. App.1994) (interpreting the 1990 version of Utah Code section 76–10–803). "[A] private party seeking damages for the creation of a public nuisance must . . . [either] show that defendant's action constituted nuisance per se, [or] demonstrate that the defendant's conduct was unreasonable in order to impose liability." *Id.* at 148–49 (citing *Branch v. W. Petroleum, Inc.*, 657 P.2d 267, 276 (Utah 1982); *Turnbaugh v. Anderson*, 793 P.2d 939, 943 (Utah Ct.App.1990)). The Goebels did not attempt to assert negligence per se. In-

stead, they focused on proving that Southern acted unreasonably. The *Erickson* court also properly explained what constitutes "unreasonable" behavior: "Conduct creating a nuisance which harms the plaintiff is unreasonable only where it is intentional, negligent, reckless, or ultrahazardous." *Id.* at 149. The parties agree that Southern's act of allowing the gap to exist was neither intentional, nor reckless, nor ultrahazardous. Consequently, in order to survive Southern's motion for directed verdict on the public nuisance claim, the Goebels had to present evidence from which a reasonable jury could find that Southern's conduct was negligent.

¶ 27 The Goebels argue that because the court in *Erickson* did not discuss whether notice is required to prove unreasonableness, notice is not required. We disagree for two reasons. First, there is no reason to believe that notice was at issue in *Erickson*. In *Erickson*, the plaintiff bicyclist collided with a sign defendant had placed on the side of the road a few hours previously. *Id.* at 146. There is no reason to believe that notice would have been an issue on appeal in *Erickson* because outside of a few conceivable but highly improbable circumstances, a party will always have notice of its own actions. In contrast here, Mr. Goebel's accident was caused by a gap that either grew on its own or was created by a third party, such as a snow plow driver. Second, we believe that failure to repair a defective condition about which one neither knows nor reasonably should know is neither negligent nor unreasonable. That is why notice is a requirement in negligence cases such as this one. *See supra* Part I.C (discussing *Schnuphase*, 918 P.2d at 476, and *Fishbaugh*, 969 P.2d at 407).

¶ 28 Thus, we find that the trial court committed no error in granting Southern's motion for directed verdict.

## II. DISMISSAL OF THE GOEBELS' SECTION 56–1–11

### NEGLIGENCE CLAIM

¶ 29 The Goebels' second argument is that the trial court erred in ruling that the

Goebels could not pursue a claim against Southern based on Utah Code section 56–1–11 because such a claim would be superfluous to the Goebels' common law negligence claim. We review a trial court's decision to dismiss a claim for correctness, giving no deference to its legal conclusions on the issue. *Rushton v. Salt Lake County,* 1999 UT 36, ¶ 17, 977 P.2d 1201.

¶ 30 Section 56–1–11 of the Utah Code provides, "Every railroad company shall be liable for damages caused by its neglect to make and maintain good and sufficient crossings at points where any line of travel crosses its road." Utah Code Ann. § 56–1–11 (2000). The Goebels assert that section 56–1–11's use of the word "neglect" refers to a kind of wrongdoing different from "negligence," and that therefore a claim pursued under section 56–1–11 does not require a showing that Southern had actual or constructive notice of the dangerous condition. If we found this argument convincing, it would mean that a claim under section 56–1–11 was not superfluous to the Goebels' common law negligence claim.

¶ 31 Although the Goebels cite case law in which notice was not at issue, *see Van Wagoner v. Union Pac. R.R. Co.,* 186 P.2d 293 (Utah 1947), and deduce therefrom that notice is not required, they cite no affirmative pronouncements for this point. As explained above in Part I.B, notice is required for a claim based on section 56–1–11 to survive. The clear rule from *Allen, Schnuphase,* and *Fishbaugh* is that notice is required to prove negligence in the context of a case such as this one. We find no reason to believe that the legislature used the word "neglect" in section 56–1–11 as a sort of code word for "negligence liability in the absence of notice." If the legislature saw fit to uproot the thoroughly entrenched notion of notice from the law of negligence in cases like this, we believe it could and would do so more explicitly and less ambiguously than by simply using the word "neglect." The trial court therefore was correct in dismissing the Goebels' section 56–1–11 claim for negligence.

## III.  A DUTY BASED ON THE AGREEMENT

¶ 32 The Goebels' third argument is that the trial court erred in finding that the Agreement was clear and unambiguous and did not create a duty of care running from Southern to the Goebels. Alternatively, the Goebels argue, the Agreement is ambiguous on the question of whether it creates the Goebels' desired duty of care and, therefore, the Goebels should be permitted to introduce extrinsic evidence on this point.

¶ 33 Even if we were to find that the Agreement created a duty that ran from Southern to the Goebels, and that the trial court therefore erred in ruling to the contrary, such an error would not warrant reversal. This is because we affirm the trial court's finding that Southern had a duty to the Goebels pursuant to Utah Code sections 10–7–26(2), 10–7–29, and 56–1–11, and Salt Lake City Code section 14.44.030. *See supra* Part I.B. The Goebels expressly acknowledge this point, but ask us to address the question for purposes of the new trial that the Goebels request us to grant in this case. Because we affirm, however, no new trial will be held, and it is therefore unnecessary for us to reach the question of whether the Agreement gave rise to a duty running from Southern to the Goebels. We generally do not decide issues unnecessary to the outcome of the case, *see Provo City Corp. v. Thompson,* 2004 UT 14, ¶ 22, 86 P.3d 735 (finding the court of appeals' discussion of an issue to be merely advisory in nature where the court of appeals' conclusion on the issue "lack[ed] ... any meaningful effect to the parties"), and we are disinclined to issue advisory opinions, *Miller v. Weaver,* 2003 UT 12, ¶ 26, 66 P.3d 592.

## IV.  EXCLUSION OF EVIDENCE

¶ 34 The Goebels' fourth argument is that the trial court erred in excluding, on the basis of rule 403 of the Utah Rules of Evidence, the empirical evidence of their expert witness, David Ingebretsen. According to

the Goebels, the evidence would have lent strength to Mr. Ingebretsen's opinion, which was allowed into evidence, that Mr. Goebel's accident occurred when his front wheel entered the gap. Specifically, the evidence consisted of the results of a test that Mr. Ingebretsen performed to confirm that Mr. Goebel's tire could fit into a gap like the one at the subject crossing.

¶ 35 Even if we were to conclude that the trial court did err in excluding the evidence, our decision on the issue would be of no consequence to this litigation in light of our other holdings. That is because the implicit reason for the Goebels' appeal on this issue is that the evidence should have been admitted because it would have assisted the trier of fact in evaluating the Goebels' case. Because we affirm the trial court's decision to grant the directed verdict and remove the case from the jury's consideration, it is unnecessary for us to decide this issue.[1] *See Thompson*, 2004 UT 14 at ¶ 22, 86 P.3d 735; *Miller*, 2003 UT 12 at ¶ 26, 66 P.3d 592.

## V. RETROACTIVE APPLICATION OF NOTICE OF CLAIM REQUIREMENTS

¶ 36 The Goebels' fifth and final claim on appeal is that the trial court erroneously granted Salt Lake City's motion for summary judgment because the Goebels complied with the notice of claim requirements in the Governmental Immunity Act in effect on the date of Mr. Goebel's injury. We review for correctness questions regarding the law applicable in a case, including the issue of whether a given law can or should be applied retroactively. *Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n*, 953 P.2d 435, 437 (Utah 1997); *Brown & Root Indus. Serv. v. Indus. Comm'n*, 947 P.2d 671, 675 (Utah 1997).

¶ 37 "[T]he Immunity Act demands strict compliance with its requirements to allow suit against governmental entities. The notice of claim provision, particularly, neither contemplates nor allows for anything less." *Wheeler v. McPherson*, 2002 UT 16, ¶ 13, 40 P.3d 632. Mr. Goebel's accident occurred on February 19, 1998, at which time the Utah Code required the notice of claim to be "directed and delivered to the *responsible governmental entity* according to the requirements of § 63–30–12 or § 63–30–13." Utah Code Ann. § 63–30–11(3)(b)(ii) (1997) (emphasis added). Section 63–30–13, the other statutory provision pertinent to this issue, required filing of the notice of claim with "the *governing body* of the political subdivision" within one year of the date on which the claim arose. *Id.* § 63–30–13 (emphasis added). Thus, the Goebels argue that they properly and timely filed their notice of claim, because they filed it with DeeDee Corradini, the mayor of Salt Lake City at the time of filing, and also with the "Salt Lake City Council and All Members of the Salt Lake City Council" within one year of the accident.

¶ 38 The Goebels recognize that the notice requirement in effect on August 11, 1998, when they actually filed their notice, was different from that which was in effect at the time of Mr. Goebel's injury, due to a statutory amendment effective May 4, 1998. The notice provision in effect on August 11, 1998 required the notice of claim to be directed and delivered to "the city or town *recorder*, when the claim is against an incorporated city or town." *Id.* § 63–30–11(3)(b)(ii)(A) (Supp.2003) (emphasis added). They argue, however, that the amended notice provision was inapplicable to their claim because applying it to them would constitute improper retroactive application of the law.

¶ 39 A statute is not to be applied retroactively unless the statute expressly de-

---

1. Any litigant seeking to overturn the trial court's decision to exclude evidence on the basis of rule 403 faces a heavy burden: "We review a trial court's decision to admit or exclude evidence under Rule 403 of the Utah Rules of Evidence under an abuse of discretion standard, and will not overturn a lower court's determination of admissibility unless it is beyond the limits of

reasonability." *Diversified Holdings, L.C. v. Turner*, 2002 UT 129, ¶ 6, 63 P.3d 686 (internal quotation omitted). Our review of the record and the trial court's reasoning in this case strongly suggests that the Goebels' arguments would not have been able to shoulder this burden.

clares that it operates retroactively. *Id.* § 68–3–3 (2000); *Stephens v. Henderson,* 741 P.2d 952, 953–54 (Utah 1987). We agree with the United States Supreme Court that as a general rule, "[r]etroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). This rule applies only with respect to substantive laws, however; statutes that do not "enlarge, eliminate, or destroy" substantive rights can be applied retroactively. *Moore v. Am. Coal Co.,* 737 P.2d 989, 990 (Utah 1987) (internal quotation omitted), *quoted in Thomas v. Color Country Mgmt.,* 2004 UT 12, ¶ 30, 84 P.3d 1201 (Durham, C.J., concurring). Convenience, reasonableness, and justice are factors we consider in deciding whether a statute has a merely remedial or procedural purpose. *Docutel Olivetti Corp. v. Dick Brady Sys.,* 731 P.2d 475, 478 (Utah 1986) (quoting *Boucofski v. Jacobsen,* 36 Utah 165, 104 P. 117, 119–20 (1909)); *see also Moore,* 737 P.2d at 990 (stating that convenience and reasonableness are factors to be considered).

> When analyzing whether applying a statute as amended "would have retroactive effects inconsistent with the usual rule that legislation is deemed to be prospective," we should use "a common sense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.' This judgment should be informed and guided by 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" *Martin v. Hadix,* 527 U.S. 343, 357–58, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (quoting *Landgraf v. USI Film Prods.,* 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)).

*Thomas,* 2004 UT 12 at ¶ 35, 84 P.3d 1201 (Durham, C.J., concurring). Considering the strong presumptions against retroactivity in the law, and the common sense, functional factors that we consider in deciding whether to apply a law retroactively, we should err on the side of finding a statute substantive if we have doubt about the issue.

¶ 40 We have no doubt that the change in the notice of claim provision at issue in this case is procedural in nature, and therefore retroactively applicable. The amendment did nothing to affect the Goebels' substantive rights to bring suit against the City. It merely changed the identity of the party receiving the notice of claim from the City's "governing body" to the city recorder. It would be difficult to conceive of a statutory change that would do less to "enlarge, eliminate, or destroy" a plaintiff's substantive rights. The trial court therefore properly granted summary judgment to the City.

### CONCLUSION

¶ 41 The trial court correctly granted Southern's motion for directed verdict and correctly dismissed the Goebels' negligence claim under section 56–1–11 of the Utah Code. As it was unnecessary to our resolution of the issues, we have not addressed whether Southern owed the Goebels a duty of care pursuant to the Agreement or whether the trial court abused its discretion in excluding evidence under rule 403 of the Utah Rules of Evidence. Finally, the trial court correctly granted the City's motion for summary judgment on the grounds that the 1998 amendment to Utah Code section 63–30–11(3)(b)(ii), which demands strict compliance, is retroactively applicable.

¶ 42 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.