2008 UT App 188

**Gloria SORIANO, Plaintiff and Appellee,**

v.

**Elizabeth A. GRAUL, M.D., an individual, Defendant and Appellant.**

No. 20070347–CA.

Court of Appeals of Utah.

May 22, 2008.

Elliott J. Williams and Stephen T. Hester, Salt Lake City, for Appellant.

Fred R. Silvester and Spencer C. Siebers, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., DAVIS and McHUGH, JJ.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Defendant Elizabeth A. Graul, M.D. appeals the trial court's order denying her Motion to Stay Litigation and Compel Arbitration. Dr. Graul argues that the trial court incorrectly determined that the 2004 amendments to the Utah Health Care Malpractice Act's arbitration provision are retroactive. *See* Medical Dispute Resolution Amendments, ch. 83, § 1, 2004 Utah Laws 317, 317–18 (codified at Utah Code Ann. § 78–14–17 (Supp.2007)). We affirm.

## BACKGROUND

¶ 2 On April 28, 2004, Plaintiff Gloria Soriano consulted with Dr. Graul concerning pain and discomfort she was experiencing. On the same day, Soriano signed an arbitration agreement (the Agreement) requiring her to submit to binding arbitration for all disputes and claims "arising from the medical care rendered ... after the date of this agreement." At the time the Agreement was executed, medical arbitration agreements were governed by the 2003 version of Utah Code section 78–14–17 (the Arbitration Statute). *See* Utah Code Ann. § 78–14–17 (Supp.2003)

(amended 2004). However, shortly after the Agreement was signed, the Arbitration Statute was amended (the 2004 Amendments), with the amendments becoming effective on May 3, 2004. *See id.* (Amendment Notes) (Supp.2007); Medical Dispute Resolution Amendments, ch. 83, § 1, 2004 Utah Laws 55, 317–18. The primary impetus for the 2004 Amendments was a response to public outcry requesting that the status of medical arbitration be changed from mandatory to voluntary. *See generally* Recording of Utah House Floor Debates, 56th Leg., Gen. Sess. (Mar. 1, 2004) (comments on Senate Bill 245S01), *available at* http://www.le.utah.gov/asp/audio/index.asp?House=H.

¶ 3 Almost two weeks after the Agreement was signed, Dr. Graul operated on Soriano. Over two years later, on September 18, 2006, Soriano sued Dr. Graul, claiming medical malpractice and loss of consortium for injuries allegedly resulting from the surgery. Dr. Graul filed a motion seeking to stay the litigation and compel arbitration, arguing that the Agreement required such a course of events. Soriano responded that the Agreement was unenforceable because it failed to comply with the requirements set forth in the 2004 Amendments. In her reply, Dr. Graul did not dispute that the Agreement was not compliant with the 2004 Amendments but, instead, argued that the 2004 Amendments were not retroactive and that the Agreement was governed by the 2003 version of the Arbitration Statute, with which it complied. After a hearing on the motion to compel, the trial court denied Dr. Graul's motion, concluding that the 2004 Amendments were retroactive and that the Agreement was therefore unenforceable. Dr. Graul appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 4 The issue of whether a statute should be applied retroactively presents a question of law that we review for correctness, giving no deference to the trial court's legal conclusions. *See Goebel v. Salt Lake City S.R.R.*, 2004 UT 80, ¶ 36, 104 P.3d 1185.

## ANALYSIS

### I. The 2004 Amendments Are Retroactive

¶ 5 Dr. Graul advances three arguments against retroactive application of the 2004 Amendments. First, she asserts that the legislature did not expressly declare that the amendments were retroactive and that the trial court's conclusion otherwise was in error. Next, she argues that the amendments affect the substantive rights of parties, and thus, their retroactive application is prohibited. And finally, she asserts that retroactive application of the 2004 Amendments offends the Contracts Clauses of the United States and Utah Constitutions. Soriano responds that (1) the Arbitration Statute explicitly states that the 2004 Amendments are to apply retroactively and, therefore, such application is not prohibited, and (2) Dr. Graul's constitutional arguments are not properly before this court.

### A. The Arbitration Statute Expressly Declares Retroactivity

¶ 6 Utah Code section 68–3–3 states that "[n]o part of [the Utah Code] is retroactive, unless expressly so declared." Utah Code Ann. § 68–3–3 (2004). Accordingly, the Utah Supreme Court has repeatedly held that "[a] statute is not to be applied retroactively unless the statute expressly declares that it operates retroactively." *Goebel*, 2004 UT 80, ¶ 39, 104 P.3d 1185; *see also Thomas v. Color Country Mgmt.*, 2004 UT 12, ¶ 31, 84 P.3d 1201 (Durham, C.J., concurring) ("Utah courts follow the general rule that 'a statute generally cannot be given retroactive effect unless the legislature expressly declares such an intent in the statute.'" (quoting *Washington Nat'l Ins. Co. v. Sherwood Assocs.*, 795 P.2d 665, 667 (Utah Ct.App.1990))). Thus, we begin with an examination of the plain language of the statute. *See Cache County v. Property Tax Div.*, 922 P.2d 758, 767 (Utah 1996) ("The best evidence of the legislature's intent is the plain meaning of the statute.").

¶ 7 Subsection one of the 2004 version of the Arbitration Statute states, in part:

(1) *After May 2, 1999, for a binding arbitration agreement between a patient and a health care provider to be validly executed,* or, if the requirements of this Subsection (1) have not been previously met on at least one occasion, renewed:

(a) the patient shall be given, in writing, the following information on:

. . . .

(iv) the right of the patient to decline to enter into the agreement and still receive health care . . .;

(v) the automatic renewal of the agreement each year unless the agreement is canceled in writing before the renewal date. . . .

Utah Code Ann. § 78–14–17(1) (Supp.2007) (emphasis added). Subsection (1) also enumerates several other items that patients must be advised of, in writing, before entering into an arbitration agreement, including the patient's right to have questions about the agreement answered and the patient's right to rescind. *See id.* § 78–14–17(1)(a)(vi)–(vii). Importantly, subsection (5) of the statute states that "[t]he requirements of Subsection (1) *do not apply to a claim governed by a binding arbitration agreement that was executed or renewed before May 3, 1999.*" *Id.* § 78–14–17(5) (emphasis added).

¶ 8 Based on this language, Soriano asserts, and the trial court agreed, the 2004 Amendments are retroactive as to all arbitration agreements signed after May 2, 1999. Dr. Graul, on the other hand, argues that because the statute does not "expressly declare that the 2004 Amendments are to be applied retroactively," i.e., does not use the term "retroactive," the 2004 Amendments apply only to agreements signed on or after May 3, 2004, the amendments' effective date. We agree with Soriano, however, that the inclusion of the language "after May 2, 1999," *id.* § 78–14–17(1), clearly establishes the legislature's intent that the 2004 Amendments are to apply retroactively to all medical arbitration agreements entered into after that date.[1] Notwithstanding this conclusion, we

---

1. The 2002 version of the Arbitration Statute also included the language, "After May 2, 1999, for a binding arbitration to be valid . . ." and, "The requirements of Subsection (1) do not apply to a

take note of the legislative history, which provides further support for our decision. *See Roark v. Crabtree,* 893 P.2d 1058, 1061–62 (Utah 1995) (examining the legislative history in conjunction with the statute's plain language to determine if the legislature intended for the statute to apply retroactively).

¶ 9 In debating the 2004 Amendments, the legislators pondered retroactivity, as the following reflects:

[Rep. Holdaway].... What would happen with this bill for those that have already signed the arbitration agreement would they be given any notice of being able to go back and make that a voluntary ... participation as opposed to involuntary ... 'cause I'm not seeing anywhere in the bill that that's addressed.

[Rep. Urquhart] Yeah I, I am not aware of the answer of that. I think that an agreement that was signed under the existing law would continue to have ... would continue to be valid because remember that this is a situation where every other profession can require mandatory arbitration and for a season we told medical providers that they could be like every other business out there and now we would be pulling that authority away from them, so ...

[Rep. Holdaway] ... the only concern I've got is having signed one of these arbitration agreements and having constituents contact me with regard to the difficulty in, in moving away from the arbitration agreement there is there is difficulty in that the requirements of rescinding that arbitration agreement. I mean it seemed to be quite prohibitive.

[Rep. Urquhart] Well the way that, *the change that this would make is from heretofore.*[2] *Agreements that are signed would only be good for one year.* And so that would apply. Again we're creating law here and telling these providers that they can't be like any other business out there, *we're telling them that their arbitration agreements are only good for one year so I don't know ...*

[Rep. Holdaway] *Would that be retroactive to the arbitration agreements that have already been signed?*

[Rep. Urquhart] *Well yes. It would apply heretofore,* meaning that if you signed an agreement in July and everyone's contemplation was that that would last forever, this law is saying that *we're setting aside those contemplations and it will expire, as of July it will have to be renewed. These are only good for one year.*

. . . .

Right now they signed thinking that it was forever but *we're changing the parties' expectations, we're telling them that that is only good for one year after which they can renew* that ...

. . . .

[Rep. Dunnigan] ... I'm assuming this is going to apply prospectively and retroactively ...

. . . .

[Rep. Urquhart] So they signed up thinking that this agreement was going to last forever, both parties did the doctors did and so what we're doing is changing that under the law that someone who has been receiving those medical services can now say you know what, after one year I signed up for this in July come next July I'm revoking the arbitration provision.

[Rep. Dunnigan] *So is that going to apply to people that have already signed these?*

[Rep. Urquhart] *Yes.*

Recording of Utah House Floor Debates, 56th Leg., Gen. Sess. (Mar. 1, 2004) (statements of Reps. Urquhart, Holdaway, and Dunnigan on Senate Bill 245S01) (emphasis added), *available at* htpp://www.le.utah.gov/asp/audio/index.asp?House=H. Although Representative Urquhart initially stated that he was not sure whether the 2004 Amendments would apply retroactively, as the debate progressed he answered that question in the affirmative, and we presume that the legislature considered that fact when passing

claim governed by a binding arbitration agreement that was executed or renewed before May 3, 1999." *See* Utah Code Ann. § 78–14–17 (2002).

**2.** Black's Law Dictionary defines "heretofore" as "[u]p to now; before this time, <a question that has not heretofore been decided>." *Black's Law Dictionary* 584 (abr. 7th ed.2000).

the bill. Thus, our review of the legislative debates strengthens our prior conclusion that the 2004 Amendments to the Arbitration Statute are retroactive and apply to all agreements signed after May 2, 1999.

¶ 10 In practical application, this means that arbitration agreements signed after May 2, 1999, must have been renewed in compliance with the 2004 Amendments. Most notably, upon renewal, a patient must be informed that he or she "may not be denied health care on the sole basis that the patient ... refused to enter into a binding arbitration agreement with a health care provider." Utah Code Ann. § 78–14–17(3) (Supp.2007). In this case, the Agreement was signed in April 2004. At the time it was executed, it necessarily did not incorporate the requirements of the 2004 Amendments. Because of the retroactivity of the 2004 Amendments and the fact that the Agreement was executed after May 2, 1999, it was no longer enforceable when the suit was filed on September 18, 2006. Furthermore, one year after execution of the Agreement, in April 2005, the parties did not renew the Agreement to reflect the legislative changes. Thus, the Agreement became invalid as of April 2005, and Soriano was therefore not

precluded from bringing her September 2006 lawsuit against Dr. Graul.[3] Consequently, we affirm the trial court's conclusion.[4]

## II. The Constitutional Contracts Clauses

¶ 11 Finally, Dr. Graul argues that the retroactive application of the 2004 Amendments offends the Contracts Clauses of the United States and Utah Constitutions.[5] Soriano responds that this court should not address this argument because Dr. Graul first made mention of it, in a cursory manner, in her reply brief to the trial court.[6]

¶ 12 Rule 7 of the Utah Rules of Civil Procedure states that a "reply memorandum ... shall be limited to rebuttal of matters raised in the memorandum in opposition." Utah R. Civ. P. 7(c)(1). "Where a party 'first raises an issue in his reply memorandum, it is not properly before the trial court and we will not consider it for the first time on appeal.'" *Stevens v. LaVerkin City,* 2008 UT App 129, ¶ 31, 183 P.3d 1059 (alterations omitted) (quoting *State v. Phathammavong,* 860 P.2d 1001, 1004 (Utah Ct.App. 1993)). Although the trial court has discretion to consider issues raised in additional memoranda, "such memoranda 'will [not] be considered without leave of court.'" *Id.* (al-

3. We acknowledge Dr. Graul's argument that this interpretation could present a potential hardship for physicians like her who see patients only one or two times and have few occasions to renew their agreements. However, we note that physicians were not precluded from contacting patients and entering into new arbitration agreements, in compliance with the 2004 Amendments, at the time the legislature amended the Arbitration Statute. Further, we note that our responsibility is to interpret the language of the statute and that matters of policy such as this one are best resolved through the legislative process.

4. Dr. Graul further argues that because the statute does not contain an express declaration of retroactivity, this court must presume that the 2004 Amendments are substantive and, therefore, should not be applied retroactively. As previously mentioned, "a statute generally cannot be given retroactive effect unless the legislature expressly declares such an intent in the statute." *Washington Nat'l Ins. Co. v. Sherwood Assocs.,* 795 P.2d 665, 667 (Utah Ct.App.1990). There is, however, one exception to this general rule: "*[E]ven without express legislative intent* a statute may be applied retroactively if it affects only procedural and not substantive rights." *Id.* (emphasis added). As discussed above, the inclu-

sion of the May 2, 1999 date clearly expresses the legislature's intent that the 2004 Amendments are to be applied retroactively. Therefore, the exception to the general rule—which applies in the absence of express legislative intent, *see id.*— is inapplicable here. Thus, we need not further address Dr. Graul's argument that the 2004 Amendments make substantive changes.

5. Article I, Section 10 of the United States Constitution states that "[n]o State shall ... pass any ... law impairing the obligation of contracts," U.S. Const. art. I, § 10, and Article I, Section 18 of the Utah Constitution states that "[n]o bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be passed," Utah Const. art. I, § 18.

6. Dr. Graul's Contracts Clause argument appeared, in its entirety, in the following sentence in Dr. Graul's Reply Memorandum in Support of Motion to Stay Litigation and Compel Arbitration: "Retroactive application of the 2004 amendment[s] ... would impair the contractual relationship between parties, and would fail to pass muster under the Contracts Clause of the U.S. and Utah Constitutions, which prohibits laws 'impairing the obligations of contracts.'"

teration in original) (quoting Utah R. Civ. P. 7(c)(1)).

¶ 13 Dr. Graul first raised her constitutional argument in her reply brief to the trial court without any supporting legal analysis.[7] She also did so without asking leave of the court, and presumably based on this fact, the trial court declined to address her constitutional argument in its ruling. Thus, we conclude that this issue was not properly before, nor addressed by, the trial court, and we decline to further address it on appeal.

## CONCLUSION

¶ 14 We affirm the trial court's conclusion that the 2004 Amendments are retroactive because the Arbitration Statute's plain language, as well as its legislative history, indicates that the law applies to all medical arbitration agreements entered into after May 2, 1999. Based on this conclusion, the general rule regarding retroactivity does not apply. Finally, we decline to reach Dr. Graul's constitutional arguments because they were not properly before the trial court in that they were initially raised in a reply memorandum and, thus, were not addressed by the trial court. Because these arguments were not preserved, we are precluded from reviewing them on appeal. We affirm.

¶ 15 WE CONCUR: JAMES Z. DAVIS and CAROLYN B. McHUGH, Judges.

---

**7.** The United States Supreme Court has explained that the examination of legislation for validity under the Contracts Clause requires a three step analysis. First, the court must examine "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) (internal quotation marks omitted). If the legislation substantially impairs the contractual rights, "the State, in justification, must have a significant and legitimate public purpose behind the regulation." *Id.* "Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption." *Id.* at 412, 103 S.Ct. 697 (alterations in original) (internal quotation marks omitted). In this instance, Dr. Graul has failed to analyze any of these questions and only argues that the legislation changes the rights of the parties to existing contracts.