2009 UT 22

**Ray William GARRARD, Plaintiff and Appellant,**

v.

**GATEWAY FINANCIAL SERVICES, INC.; Civil Process Services & Investigations, LLC; and Granite Furniture Company, Defendants and Appellees.**

**No. 20070968.**

Supreme Court of Utah.

April 17, 2009.

before the district court.

James E. Magleby, Jason A. McNeill, Christopher M. Von Maack, Salt Lake City, for plaintiff.

Reed R. Braithwaite, St. George, John D. Richards, Salt Lake City, for defendant.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 The Utah Legislature enacted the Unfair Practices Act, codified in Utah Code sections 13–5–1 to –18, to "safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented." Utah Code Ann. § 13–5–17 (2005). Similarly, the Federal Trade Commission Act declares "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce" unlawful. 15 U.S.C. § 45(a)(1) (2006). To determine whether an act is unfair or decep-

tive under the federal Act, the United States Supreme Court adopted what is now known as the Cigarette Rule—a three-part test that considers whether the act is unlawful or violates public policy, whether it is immoral or unethical, and whether it injures consumers. Ray Garrard, the appellant in this matter, asks us to incorporate this test into the Utah Unfair Practices Act. We decline to do so. The Utah Act is unambiguous in its focus on competition and monopolistic behavior; therefore, we do not look to outside sources to define the practices the Utah Act would deem unfair or deceptive.

## BACKGROUND

¶ 2 In reviewing the district court's grant of a directed verdict, we review the facts in the light most favorable to the losing party. *Goebel v. Salt Lake City S. R.R. Co.*, 2004 UT 80, ¶ 10, 104 P.3d 1185.

¶ 3 In July 1999, Ray and Marva Garrard purchased a bedroom set for $2,419.95 from Granite Furniture Company. On the advice of a sales associate, they agreed to a six-month financing agreement. The Garrards understood this financing agreement to waive any finance charges if the balance of the account was paid within six months. However, the contract required monthly minimum payments, which the Garrards failed to make. Instead, the Garrards made two sporadic payments and then paid the remaining amount due on January 11, 2000, believing the six-month financing period to expire on January 24.

¶ 4 On March 5, 2004, the Garrards received a letter with an enclosed copy of a default judgment of $897.52 for unpaid interest and finance charges from Gateway Financial Services, Inc. (Gateway), a collection agency. Prior to this letter, the Garrards were unaware that any legal action had been taken against them. The Garrards immediately contacted legal counsel to resolve the matter. A few days later, the Garrards' legal counsel requested that Gateway provide proof of service for a small claims affidavit delivered to the Garrards. Gateway responded the same day by faxing a proof of service, which indicated that a service processor from Civil Process Services & Investi-

gations, LLC (Civil Process Services) had personally served Marva Garrard on November 28, 2003 at 12:10 p.m. This was impossible; Marva Garrard passed away November 13, 2002, over a year before the reported date of service. In response to Mr. Garrard's challenge to the proof of service, on March 26, 2004, Gateway produced another proof of service. This second proof of service indicated that a service processor had instead personally served Ray Garrard on November 28, 2003 at 12:10 p.m. Again, this was impossible; Mr. Garrard was not home at that time. Gateway eventually agreed to remove the judgment and an order vacating the judgment was entered on September 30, 2004.

■ ¶ 5 Garrard sued Civil Process Services[1] to recover treble damages under the Unfair Practices Act arguing that falsifying the civil process documents constituted unfair competition because it violated public policy, was unethical and immoral, and caused substantial injury to consumers. *See* Utah Code Ann. § 13–5–14 (2005). Garrard also sued Granite Furniture Company for violating the Unfair Practices Act. The matter was tried to a jury. Following the close of evidence, Civil Process Services and Granite Furniture Company moved for a directed verdict on the basis that Garrard failed to prove that they had violated the Unfair Practices Act. The district court granted the motion for directed verdict, and Garrard now appeals.[2] We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j). We review the trial court's grant of a directed verdict for correctness. *Goebel,* 2004 UT 80, ¶ 10, 104 P.3d 1185.

## ANALYSIS

■ ¶ 6 The Utah Unfair Practice Act makes unlawful "[u]nfair methods of competition in commerce or trade." Utah Code Ann. § 13–5–2.5(1) (2005). Specifically, the Act prohibits anticompetitive discriminatory pricing and advertising goods the retailer is not prepared to supply. *See id.* §§ 13–5–3, –8. Additionally, the Act gives the Division of Consumer Protection authority to prevent the use of unfair methods of competition and

to enforce the prohibitions of the chapter through agency adjudications. *Id.* § 13–5–2.5(2)–(3).

■ ¶ 7 Mr. Garrard urges us to expand the reach of the Unfair Practice Act beyond anticompetitive methods to unfair and discriminatory practices as defined by the federal Cigarette Rule. The Federal Trade Commission uses the Cigarette Rule, which was originally adopted to regulate unfair or deceptive advertising or labeling of cigarettes, to determine whether an act is unfair under the federal Act. *FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233, 244 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972) [hereinafter *Sperry* ]. Under the rule, the federal agency considers three factors in determining whether an act is unfair or discriminatory: (1) whether the act offends public policy as established by statute, common law, or otherwise; (2) whether the act is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers or competitors. *Id.* The United States Supreme Court acknowledged and implicitly approved of the Cigarette Rule in *Sperry. Id.* at 244, 92 S.Ct. 898.

¶ 8 Utah's Unfair Practices Act, Garrard argues, is so similar to the Federal Trade Commission Act that this court should interpret it in the same manner as the United States Supreme Court interpreted the federal Act in *Sperry.* In *Sperry,* the Court found that the Federal Trade Commission Act was broad in scope and could allow the Federal Trade Commission to prohibit practices that are not per se antitrust law violations. *See id.* There is a critical difference, however, between the language in the Federal Trade Commission Act, as interpreted by *Sperry,* and Utah's Unfair Practices Act. The federal Act makes unlawful "[u]nfair methods of competition in or affecting commerce, *and unfair or deceptive acts or practices in or affecting commerce.*" 15 U.S.C. § 45(a)(1) (2006)(emphasis added). In reviewing the scope of the Federal Trade Commission Act, the *Sperry* court found that the addition of this language indicated that the scope of the Act extended beyond anticompetitive prac-

---

**1.** Garrard also sued Gateway. Gateway settled and was dismissed as a party to the suit.

**2.** Granite Furniture Company did not participate in this appeal.

tices. *Sperry*, 405 U.S. at 244, 92 S.Ct. 898. In fact, the Court noted, the House Report for the amendment explicitly said so. *Id.* The Report summarized Congress's purpose for the amendment as "mak[ing] the consumer, who may be injured by an unfair trade practice, of equal concern, before the law, with the merchant or manufacturer injured by the unfair methods of a dishonest competitor." *Id.*

¶ 9 In contrast to the Federal Trade Commission Act, Utah's Unfair Practices Act makes unlawful only "[u]nfair methods of competition in commerce." Utah Code Ann. § 13–5–2.5(1). Lacking an independent reference to unfair acts or practices, there is no indication that the Utah Legislature intended the Act to reach any practices beyond anti-competitive behavior.

¶ 10 Garrard argues that the legislature did intend the Act to have a broader scope and points to the purpose stated in Utah Code section 13–5–17 as proof. This section states:

> The Legislature declared that the purpose of this act is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, *by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented.* This act shall be liberally construed that its beneficial purposes may be subserved.

Utah Code Ann. § 13–5–17 (emphasis added).

¶ 11 While this section does indicate the Division of Consumer Protection may prohibit unfair and discriminatory practices, the phrase is modified by a reference to preserving competition. Thus, we find it unambiguous that the legislature intended the Act to apply only to anticompetitive behavior. Garrard urges us to look to the authority of our sister states on this subject, some of whom have adopted the Cigarette Rule under their statutes, usually in reliance on expansive language similar to that contained in the Federal Trade Commission Act. Because the language of this statute is unambiguous, we will not do so. *Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989) ("Where statutory language is plain and unambiguous, this Court will not look beyond the same to divine legis-lative intent. Rather, we are guided by the rule that a statute should generally be construed according to its plain language."). For this same reason, we do not look to the language of other Acts under the same title, such as the Consumer Sales Practices Act, or administrative rules adopted pursuant to these additional Acts to interpret the plain language of the Unfair Practices Act.

¶ 12 Accordingly, we hold that the Unfair Practices Act makes unlawful only unfair methods of competition. The Act contains no language prohibiting unfair or deceptive practices in commerce, and therefore we decline to adopt the reasoning of the Supreme Court in *Sperry*. Further, because the language of the Act unambiguously addresses unfair methods that impact fair competition, we do not look to the jurisprudence of our sister states to interpret the statute. The district court's decision is affirmed.

¶ 13 We note that in interpreting the current statute, we make no judgment on the wisdom of a legislative expansion of the Unfair Practices Act to protect consumers as well as commercial competitors. The legislature has already adopted an extensive framework of consumer protection laws in other areas, and there are numerous public policy reasons for extending the Unfair Practices Act to also protect consumers. We leave it to the legislature to consider those policy concerns.

¶ 14 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.