Elmer O. ALLEN, Plaintiff and Appellant,

v.

FEDERATED DAIRY FARMS, INC., and Albertson's Inc., Defendants and Respondents.

No. 13894.

Supreme Court of Utah.

July 3, 1975.

Richard H. Thornley of Froerer, Horowitz, Packer, Thornley, Critchlow & Jensen, Odgen, for plaintiff and appellant.

Leonard H. Russon of Hansen, Wadsworth & Russon, Daniel A. Alsup, Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

Plaintiff Elmer O. Allen sued for injuries suffered when he slipped on some cottage cheese on the floor of defendant Albertson's store in Roy, Utah, which apparently came from samples being given to customers by defendant Federated Dairy Farms, Inc. On the basis of the pleadings, depositions and documentary evidence, the court granted the motion of both defendants for summary judgment on the ground that upon the plaintiff's own contentions as to the facts and the law applicable thereto, he could show no entitlement to redress. Plaintiff appeals, arguing that there are disputed issues of fact which should have been submitted to the jury, and which, if resolved in his favor would entitle him to recover.[1]

It was about 2:30 in the afternoon of March 3, 1973, after plaintiff and his wife had been in defendant's store shopping for some little time, that he slipped and fell on the cottage cheese. Neither the plaintiff nor his wife, nor any of the store personnel had seen any cottage cheese on the floor prior to the incident. Thus the only way to determine how it got there, or how long it had been there, is by inference or conjecture. However, a few feet away

---

1. *See In re Williams' Estate,* 10 Utah 2d 83, 348 P.2d 683.

from the spot, a lady demonstrator for defendant Federated Dairy was passing out samples of cottage cheese on small (one-inch square) crackers. Because no one saw any other cottage cheese on the floor either before or after the incident, the reasonable inference is that some customer had spilled it.

Plaintiff recognizes the difficulties confronted in a case such as this based on the law as established by prior rulings of this court.[2] But he argues with some ardor that this court should adopt a more "liberal" rule in what he refers to as slip-and-fall cases. In this context, and in our conception of justice, the use of the term "liberal" is somewhat puzzling. If two men claim ownership of an apple (or any other property), with whom can justice be liberal? Should it be liberal in this case with the valued and appreciated entrepreneur store operator, who is carrying on the business of the community, rendering a service to the public, and creating employment, or with the equally valued and appreciated customer, who is the life blood of the store and of commerce; and who comes in to select items of merchandise from a variety of displays which occupy his attention; and who is indeed entitled to assume that the floor of the store is safe to walk on?[3]

■ The answer, it seems to us, is that the word "liberal" has no proper application to such a situation, but that the correct policy is to accord fair and evenhanded justice to both by assuring to each the remedies and protections that the established rules of law give him; and when loss or injury occurs, to let it rest where it falls, unless it is affirmatively shown that another was at fault; and that that was the cause of the injury.

■ In order to analyze the plaintiff's argument, consistent with the objective just stated, particularly as to the matter of the knowledge of the defendant of any danger and his duty to remedy it, it is appropriate to observe that these slip-and-fall cases have usually been regarded as falling into either one or the other of two different classes.

The first involves some unsafe condition of a *temporary* nature, such as a slippery substance on the floor and usually where it is not known how it got there. In this class of cases it is quite universally held that fault cannot be imputed to the defendant so that liability results therefrom unless two conditions are met: (A) that he had knowledge of the condition, that is, either actual knowledge, or constructive knowledge because the condition had existed long enough that he should have discovered it; and (B) that after such knowledge, sufficient time elapsed that in the exercise of reasonable care he should have remedied it.

The second class of cases involves some unsafe condition of a *permanent* nature, such as: in the structure of a building, or of a stairway, etc. or in equipment or machinery, or its manner of use, which was created or chosen by the defendant (or his agents), or for which he is responsible. In such circumstances, where the defendant either created the condition, or is responsible for it, he is deemed to know of the condition; and no further proof of notice is necessary.[4]

---

2. *See e. g. Long v. Smith Food King and Cream O'Weber Dairy*, Utah, 531 P.2d 360; *Koer v. Mayfair Markets*, 19 Utah 2d 339, 431 P.2d 566; *Howard v. Auerbach Company*, 20 Utah 2d 355, 437 P.2d 895, and *Lindsay v. Eccles Hotel Company*, 3 Utah 2d 364, 284 P.2d 447.

3. *See* discussion in the article, "Supermarket Liability: Problems in Proving the Slip-and-Fall Case in Florida," 18 U. of Fla.L.Rev. 440, in which there are listed ten charac-

teristics of modern supermarket operations which combine to create hazards to shoppers. The other side of the coin is that the store operator must also contend with these difficulties, and must exercise reasonable care with respect to all of them for the safety of his patrons.

4. *See, Maugeri v. Great Atlantic and Pacific Tea Company*, 3 Cir., 357 F.2d 202 (New Jersey).

Applying the principles of law just stated to the undisputed facts here, it seems so plain as not to require elaboration that the plaintiff could not make out a cause of action under the first class of cases described above. This because there is no evidence, nor any basis from which a fair inference could be drawn, that the defendant had knowledge of the cottage cheese on the floor, nor any opportunity to remove it.

Such plausibility as there may be to the plaintiff's claim therefore must be considered as coming within the second class of cases. His argument is that there is a basis upon which the defendants could be found negligent because of the method by which they chose to give out the samples of cottage cheese. He says that it should have been foreseen that placing it on small crackers would result in some spilling and/or rejection by some customers so that some of it would end up on the floor. He suggests what he thinks would have been a more desirable alternative: that the cottage cheese could have been placed in paper cups. Defendant correctly rejoins that paper cups are not as tasty as crackers; and moreover, instead of being consumed, they would remain as residue which would more likely be cast on the floor and create hazards.

The distinction between the two classes of cases discussed above and their application to the instant situation is illustrated by the case of *Maugeri v. Great Atlantic and Pacific Tea Co.,*[5] upon which plaintiff places reliance. Although it involves a temporary situation in that the fall was on some vegetable leaves in front of a produce counter, it also comes within the second class of cases above referred to. It was pointed out that in their permanent structure the vegetable racks were slanted in such a way that it should have been anticipated that leaves would fall on the floor. But in our case there is no showing of any dangerous condition of a permanent nature. Other cases, similarly distinguish-

able because of facts significantly different from the instant one, were commented upon in our recent case of *Long v. Smith Food King.*[6]

The plaintiff's fall and his injuries are indeed regrettable. Nevertheless, in accordance with our view of justice under the law as pointed out herein, we think the trial court correctly ruled that even under the facts as contended by the plaintiff, there is no basis shown upon which to place the blame and shift the responsibility for loss to the defendants. We therefore conclude he was justified in granting their motions for summary judgment.

Affirmed. Costs to defendants (respondents).

HENRIOD, C. J., and ELLETT, J., concur.

MAUGHAN, Justice (dissenting).

Respectfully, I dissent.

With the legal analysis, of the main opinion, I cannot agree. This is not a typical slip and fall case, wherein plaintiff alleges a dangerous condition on the premises, of which defendant, in the exercise of due care, knew or should have known and remedied. In this action plaintiff correctly alleges that defendants were engaged in an activity, viz., dispensing cottage cheese and that this activity was conducted in a negligent manner, which caused plaintiff serious bodily injury. Plaintiff alleged that defendants were negligent in dispensing cottage cheese in a busy food market, knowing that it would be served to children and adults alike, and that there would be a reasonable likelihood of it being spilled on the floor, creating a hazard for the patrons using the market.

Plaintiff does not urge that the distribution of food samples is negligent conduct per se, but that this activity involves a foreseeable risk of harm to patrons of the store, unless certain reasonable measures are taken to protect those using the

5. *See* footnote 4.

6. *See* footnote 2.

premises. As evidentiary facts to support his claim that defendants had not fulfilled their duty of due care, plaintiff cites (1) the failure to maintain waste receptacles throughout the store where one could deposit unwanted cottage cheese (the only waste receptacle was located by the table where the cottage cheese was being dispensed); (2) no regularly established procedure, for inspection and clean up during these demonstrations, although an agent of defendant Albertson conceded that after a demonstration, it was his experience that unwanted samples could be found throughout the store. Significantly, a substance, such as cottage cheese, is usually distributed to patrons of a supermarket in a closed container. It would not reasonably be expected to be spilled upon the floor. When defendants for their own business advantage departed from the customary method of distribution of cottage cheese and permitted its circulation without the protection of a container, and without a procedure for inspection and clean-up; they undertook a commensurately higher duty of care, to protect patrons from the increased hazards which were reasonably foreseeable.

The trial court granted summary judgment to defendants under the authority of *Long v. Smith Food King Store*,[1] viz., no reasonable basis in the evidence upon which it could be found that defendants had notice, actual or constructive, of the presence of the foreign substance on the floor. This conclusion is erroneous.

In *Maugeri v. The Great Atlantic And Pacific Tea Company, Inc.*,[2] the Court stated that it was imperative to delineate between the two different theories of recovery which may be pursued in a falldown case. The first is where the conduct of the defendant, in and of itself, creates a foreseeable risk of harm. For such cases, actual or constructive notice is *not* an element of proof. The second theory involves a condition which arises through no fault of the defendant. In such case, defendant cannot be held liable unless he had actual or constructive notice of the condition. The distinction between the two theories becomes particularly clear where there is an intervening act by a third party, for where the intervening act is foreseeable, the defendant remains liable even if he does not have notice of the condition created by it.

In the instant action, plaintiff proceeded under the first theory that notice would not be a prerequisite to recovery where an inference could properly be drawn that the manner, in which defendants chose to conduct the demonstration, created a foreseeable risk of harm to the customers. When the plaintiff has shown that the circumstances were such as to create the reasonable probability that the dangerous condition would occur, he need not prove actual or constructive notice of the specific condition. When plaintiff has thus introduced evidence raising an inference of negligence, defendant may negate such inference by submitting evidence of due care. Such would refute any allegation that this theory makes the proprietor an insurer. It is the role of the trier-of-fact to determine whether defendant was negligent in the manner he selected to demonstrate his merchandise.[3]

To further illustrate the theory the language of *Wollerman v. Grand Union Stores, Inc.*[4] is instructive.

Here the hazard could have been caused by (1) carelessness in the manner in which the beans were piled and displayed; or (2) carelessness of an employee in handling the beans thereafter; or (3) carelessness of a patron. As to (1) and (2), defendant is chargeable whether or not it was aware of its employee's neglect. · Defendant's knowledge

1. Utah, 531 P.2d 360 (1973).

2. 357 F.2d 202, 203 (C.A.3rd 1966).

3. *See Thomason v. The Great Atlantic And Pacific Tea Company, Inc.* (C.A.4th 1969) 413 F.2d 51.

4. 47 N.J. 426, 221 A.2d 513, 514–515 (1966).

is relevant only as to (3), but even there, since the patron's carelessness is to be anticipated in this self-service operation, defendant is liable, even without notice of the bean's presence on the floor, if (4) defendant failed to use reasonable measures commensurate with the risk involved to discover the debris a customer might leave and to remove it before it injures another patron.

The customer is hardly in a position to know precisely which was the neglect. Overall the fair probability is that defendant did less than its duty demanded, in one respect or another. At least the probability is sufficient to permit such an inference in the absence of evidence that defendant did all that a reasonably prudent man would do in the light of the risk of injury his operation entailed. It is just, therefore, to place "the onus of producing evidence upon the party who is possessed of superior knowledge or opportunity for explanation of the causative circumstances."

In *Little v. Butner*[5] this legal theory was applied to a factual situation similar to the instant case. The court stated:

The defendants, by their arrangement or agreement to conduct the demonstration, created a condition, the amended petition alleges, whereby they knew or should have known that patrons, customers and children of tender years would drop particles of meat on the floor causing it to become slick and slippery and creating a dangerous condition in that area of the store where the demonstration was being conducted. These allegations, which are admitted by the demurrers, clearly bring the instant case within the first class of cases making proof of notice unnecessary. . . .

The dangerous condition here alleged was created and negligently maintained

by the defendants in agreeing to, and carrying on, the demonstration in a manner which they knew, or with the exercise of reasonable care should have known, would render the premises unsafe. Where meat samples are handed out by a demonstrator to customers in a large super market as a means of acquainting the public with the product, it is not unreasonable to assume that parts of such samples will be dropped to the floor and stepped upon by customers and patrons making the floor slick, slippery and dangerous to walk upon. Due care, under such circumstances, would seem to dictate that receptacles or other means be provided for their disposal and that seasonable cleaning of the floor would be necessary. Negligence is alleged to inhere in the condition created and the fact that meat particles were dropped by customers and children of tender years is immaterial. The over-all condition was created by the defendants in carrying on the demonstration without taking the precaution, it is alleged, of providing suitable means for disposing of the samples and of cleaning the floor at seasonable intervals. Under such circumstances, the defendants breached their duty to the plaintiff in failing to warn her of the dangerous condition created. Whether the defendants should have reasonably anticipated that the handing out of meat samples to customers and children in the store would result in meat particles being dropped, making the floor slick, slippery and dangerous for the use of plaintiff and other customers, seems clearly to present a question for a jury.[6]

The main opinion responds not to things as they are, but to things as they were. It applies old law, the rationale of which was designed to regulate conduct, not of the kind extant in the instant cause; but con-

---

5. 186 Kan. 75, 348 P.2d 1022, 1029–1030 (1960).

6. *Also see Jasko v. F. W. Woolworth,* 177 Colo. 418, 494 P.2d 839 (1972) ; *Rhodes v.*

*El Rancho Markets,* 4 Ariz.App. 183, 418 P. 2d 613 (1966) ; *Elrod v. Walls, Inc.,* 205 Kan. 808, 473 P.2d 12 (1970) ; *Forcier v. Grand Union Stores, Inc.,* 128 Vt. 389, 264 A.2d 796 (1970).

duct of a static nature, as opposed to the active conduct, with which we are here confronted.

Against the back-drop of the modern supermarket, the law upon which the main opinion rests, alone remains on the stage, while the conduct it was intended to regulate has long since left. No well organized production is possible, for the old law and the modern conduct are each acting from different scripts. The late Mr. Justice Terrell, a long-time jurist of the Florida Supreme Court, and a pioneer in this field of the law, succinctly illuminated the anachronism when he said:[7]

> In light of the disparity between the modern food market and the old time grocery, it is out of the question to contend that they are governed by the same rules of care.

This case should be reversed and remanded for trial that the jury might be permitted to determine whether the defendants were negligent, in conducting their selected method of demonstration.

TUCKETT, J., concurs in the views expressed in the dissenting opinion by MAUGHAN, J.

---

**7.** 18 University of Florida L.Rev., 440.