2014 UT App 12

**Duane PORTER, Plaintiff and Appellant,**

v.

**FARMINGTON CITY CORPORATION and Farmington City Cemetery, Defendants and Appellees.**

No. 20120911–CA.

Court of Appeals of Utah.

Jan. 16, 2014.

Brian C. Stewart, Murray, Attorney for Appellant.

Allan L. Larson and Heather S. White, Salt Lake City, Attorneys for Appellees.

Senior Judge PAMELA T. GREENWOOD authored this Memorandum Decision, in which Judges J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred.[1]

Memorandum Decision

GREENWOOD, Senior Judge:

¶ 1 Duane Porter appeals from the trial court's entry of summary judgment against him and in favor of Farmington City Corporation and Farmington City Cemetery (collectively, the City). We affirm.

¶ 2 Porter was injured on May 23, 2009, when he fell into a concealed hole on the grounds of the City's cemetery. Porter was walking across the cemetery lawn to visit his deceased wife's grave when the ground below him gave way into a hole where the soil had washed away beneath the grass. Subsequent investigation revealed that the hole was created by water escaping from a damaged swing joint that was part of the cemetery's sprinkler system.

¶ 3 Porter sued the City, alleging that it was negligent in failing to exercise ordinary care to protect him from the dangerous condition presented by the hole. The parties filed a joint motion for partial summary judgment with a stipulated statement of facts and asked the trial court to determine if the City could be held liable based on those facts. The joint statement of facts stipulated that the City owned and maintained the cemetery, that the hole was caused by water leaking from the damaged sprinkler joint, and that the damaged joint was not discovered by anyone until after Porter's injury. The parties agreed that the hole was at least one foot wide and three feet deep, that it was covered by grass, and that it "could not [have been] detected by reasonable visual inspection of the area." The parties also stipulated that the City operated the sprinkler system for approximately forty days in 2009 prior to Porter's injury, that the sprinkler head attached to the damaged joint could still work properly, and that the City had conducted various maintenance activities relating to the sprinkler system and the cemetery grounds in the days and weeks before Porter's injury occurred. The stipulated issue submitted to the trial court was as follows: "[Is the City] liable, as a matter of law, for injuries caused to [Porter], a business invitee, as a result of a sink hole on [the City's] land, created by [the City's] sprinkling system where [the City] did not have actual knowledge of the dangerous condition?"

¶ 4 The trial court granted summary judgment in favor of the City. Porter appeals, arguing (1) that the City was deemed to have notice of the unsafe condition as a matter of law because the City created the condition through the operation of its sprinkler system and (2) that even if the City was not deemed to have notice as a matter of law, there was a material fact question as to whether the City had constructive notice. We review the grant of a motion for summary judgment for correctness. *Ross v. Epic Eng'g, PC*, 2013 UT App 136, ¶ 13, 307 P.3d 576; *see also Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 ("An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." (citation and internal quotation marks omitted)).

¶ 5 Porter concedes in his reply brief that this case involves a temporary or

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

transient hazard rather than a permanent one. Generally, a landowner is liable for injuries resulting from a temporary hazard only if it "knew, or in the exercise of reasonable care should have known, of any hazardous condition and had a reasonable opportunity to remedy the same." *Canfield v. Albertsons, Inc.*, 841 P.2d 1224, 1226 (Utah Ct.App.1992) (citation and internal quotation marks omitted). It is undisputed that the City did not have actual knowledge of the hole that injured Porter. Thus, the arguments on appeal center on whether the City should be deemed to have had knowledge of the hole's existence because it created the hole or, in the alternative, whether the City could be found to have had constructive knowledge of the hole due to the length of time it had existed.

¶ 6 Porter first argues that the City created the dangerous condition on its property and that landowners are "deemed to know of the condition[s] they create." *See Jex v. JRA, Inc.*, 2008 UT 67, ¶ 26, 196 P.3d 576 (alteration in original) (citation and internal quotation marks omitted); *see also Price v. Smith's Food & Drug Ctrs., Inc.*, 2011 UT App 66, ¶ 10, 252 P.3d 365 (stating that the notice requirement does not apply if the "condition or defect was created by the defendant himself or his agents or employees" (citation and internal quotation marks omitted)). Porter asserts that the City was solely responsible for the cemetery's sprinkler system and that it operated the sprinkler system in a defective state, thereby creating the hole. Accordingly, Porter argues that the City created the hole and is therefore deemed to have knowledge of its existence. *See Jex*, 2008 UT 67, ¶ 26, 196 P.3d 576. The City responds that it did not "create" the hole, as Porter has presented no evidence that the City created the crack in the swing joint, failed to properly maintain the sprinkler system, or "did anything to break the pipe." The City argues that these circumstances distinguish the case from *Jex*, where the defendant's employee allegedly created a slippery condition by tracking snow onto a wood floor. *See id.* ¶ 27.

¶ 7 We conclude that the facts of this case are distinguishable from *Jex*, involving a visible but undetected hazard, but rather are similar to cases involving allegations of insufficient maintenance or inspection over a period of time. *See Goebel v. Salt Lake City S. R.R.*, 2004 UT 80, 104 P.3d 1185 (analyzing a claim arising from a gap in the road surface at a railroad crossing); *Fishbaugh v. Utah Power & Light*, 969 P.2d 403 (Utah 1998) (analyzing a defendant's failure to discover and repair malfunctioning streetlights); *cf. Schnuphase v. Storehouse Mkts.*, 918 P.2d 476 (Utah 1996) (analyzing a slip-and-fall claim arising from ice cream that a third-party customer had spilled on the floor of a grocery store). In particular, the following passage in *Goebel* forecloses Porter's argument here:

> If a plaintiff alleges that a defendant negligently failed to remedy a dangerous condition that the defendant did not create (as in *Schnuphase*), negligently failed to repair a dangerous malfunction in an otherwise safe system (as in *Fishbaugh*), or negligently allowed an otherwise safe condition to degrade over time into a dangerous condition (as in the instant case), then evidence of notice and a reasonable time to remedy are required to survive a motion for summary judgment or directed verdict. These requirements do not apply where the negligence claim requires the plaintiff to establish that the defendant actually created the dangerous condition or purposefully built the dangerous condition into the system for which the defendant is responsible. The rationale behind these distinct rules is that it is reasonable to presume that a party has notice of conditions that the party itself creates, but it is not reasonable to presume notice of conditions that someone else creates (as in *Schnuphase*), that arise from malfunctions (as in *Fishbaugh*), or that gradually evolve on their own.

2004 UT 80, ¶ 22.

¶ 8 There is no evidence here that the City "actually created the dangerous condition or purposefully built the dangerous condition into the system." *See id.*[2] To the contrary,

2. Porter does not contend or provide evidence that the City's sprinkler system was inherently

the City was "'responsible' for [the hole] only in the context of maintenance, not for its existence in the first place." *See id.* ¶ 20. At most, the City "failed to repair a dangerous malfunction in an otherwise safe system" or "allowed an otherwise safe condition to degrade over time into a dangerous condition." *See id.* ¶ 22. However, under such circumstances, "it is not reasonable to presume notice," *id.*, and the trial court's refusal to impute notice to the City in this case was correct as a matter of law.

¶ 9 Porter also asserts a public policy argument that notice should be imputed to the City because it was in the best position to prevent the injury from occurring. *See generally Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC,* 2009 UT 65, ¶ 53, 221 P.3d 234 ("[As] between two innocent parties, the one in the better position to prevent the harm ought to bear the loss."). However, such policy considerations are already accounted for in the various rules enunciated in Utah's statutes and premises liability case law. *See Goebel,* 2004 UT 80, ¶ 22, 104 P.3d 1185 ("The rationale behind these distinct rules is that it is reasonable to presume that a party has notice of conditions that the party itself creates, but it is not reasonable to presume notice [under other circumstances]."); *see also Canfield v. Albertsons, Inc.,* 841 P.2d 1224, 1226 (Utah Ct.App.1992) ("[P]roperty owners are not insurers of the safety of those who come upon their premises." (citation and internal quotation marks omitted)).

■■■ ¶ 10 Porter further argues that a material fact issue exists as to whether the City had constructive notice of the hole. A landowner has constructive notice of a dangerous condition when the condition has "existed long enough that [the landowner] should have discovered it." *Jex v. JRA, Inc.,* 2008 UT 67, ¶ 16, 196 P.3d 576 (citation and internal quotation marks omitted). To estab-

lish constructive notice of an unsafe temporary condition, "a plaintiff must present evidence that would show … that it had been there for an appreciable time." *Id.* ¶ 19 (omission in original) (citation and internal quotation marks omitted). Porter argues that the large size of the hole suggests it had existed for a significant period of time and thus provides a sufficient factual basis from which a jury could conclude that the City should have discovered the danger and corrected the condition.

¶ 11 The City responds that *Goebel* also governs constructive notice claims in the context of an allegation that negligent inspection or maintenance failed to discover an unsafe condition that has developed over time. *See* 2004 UT 80, ¶¶ 24–25, 104 P.3d 1185. We agree. In *Goebel,* the plaintiff was injured when his bicycle tire lodged in a gap in the road surface at a railroad crossing. *See id.* ¶ 6. In holding that the defendant was entitled to summary judgment on the issue of constructive notice, the Utah Supreme Court stated that "even if the gap had existed for a very long time, there is no reason to believe that [the defendant] should have noticed it." *Id.* ¶ 25.[3] That reasoning is especially applicable here, where the parties stipulated that "[p]rior to [Porter's] fall, the sink hole was covered by grass and *could not be detected by reasonable visual inspection* of the area." (Emphasis added.)

■■■ ¶ 12 The parties' stipulated facts include no evidence that other types of reasonable inspection could have discovered the concealed hole. On appeal, Porter argues only that the City was "solely responsible for the maintenance, repair, and inspection of the sprinkling system" and that the City's agents "routinely drive lawn mowers and trucks over the cemetery grounds." However, the mere possibility that a City vehicle might have eventually revealed the hole by driving across it does not provide a reason-

unsafe. *See generally Jex v. JRA, Inc.,* 2008 UT 67, ¶¶ 14–15, 196 P.3d 576 (explaining that the installation of a standard wooden floor did not create an inherently dangerous condition).

3. In the *Goebel* opinion, the supreme court determined that there was no evidence of the defen-

dant's failure to reasonably inspect the crossing. *See Goebel v. Salt Lake City S.R.R.,* 2004 UT 80, ¶ 23, 104 P.3d 1185. There is no evidence that the City failed to reasonably inspect its sprinkler system in this case.

able basis for a jury to conclude that the City "should have discovered" the hole. *See Jex,* 2008 UT 67, ¶ 16, 196 P.3d 576.[4]

¶ 13 For these reasons, the trial court correctly concluded that the City cannot be deemed to have had notice of the hole as a condition created by the City. The trial court also correctly concluded that there was no evidence to support Porter's constructive notice theory. Accordingly, we affirm the trial court's entry of summary judgment in favor of the City.

4. In support of his constructive notice argument, Porter cites an Arkansas case with somewhat similar facts—a hole in the grounds of a golf course, covered and concealed by grass, that caused injury to a plaintiff who stepped into it. *See Little v. Jonesboro Country Club,* 92 Ark. App. 214, 212 S.W.3d 57, 58 (2005). In that case, the court held that a question of fact existed as to whether the defendant should have discovered the danger through the use of ordinary care. *See* *id.* at 59–60. However, the hole in *Little* was a preexisting sprinkler valve enclosure, created by the defendant, that should had been capped but was not. In addition, there were known prior incidents of caps needing to be repaired or replaced, giving rise to knowledge of possible defects by the defendant. By contrast, there is no evidence here that the City had any reason to know that the hole might exist until Porter fell into it.