*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 14**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

CANDICE COCHEGRUS,
*Appellant*,

*v.*

HERRIMAN CITY, ROSECREST VILLAGE HOMEOWNERS
ASSOCIATION, INC., and FUTURE COMMUNITY SERVICES, INC.
DBA FCS COMMUNITY MANAGEMENT,
*Appellees*.

No. 20161073
Heard February 14, 2018
Filed March 26, 2020

On Direct Appeal

Third District, Salt Lake
The Honorable Andrew H. Stone
Case No. 140900711

Attorneys:

Kenneth Parkinson, Peter Lattin, Provo, for appellant

David L. Church, Salt Lake City, for appellee Herriman City

Cory D. Memmott, Salt Lake City, for appellees Rosecrest Village
Homeowners Association, Inc., and Future Community
Services, Inc. dba FCS Community Management

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE concurred.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 Candice Cochegrus tripped and fell while walking across a park strip[1] in Herriman City. She asserts that she tripped over a metal rod protruding out of a hole in the ground. Cochegrus sued Herriman City, Rosecrest Village Homeowners Association, and its maintenance company Future Community Services (FCS) (collectively, defendants) for negligence. The district court granted summary judgment to all three defendants, ruling that Cochegrus had failed to produce enough evidence to create a dispute of fact as to when the unsafe condition arose. The court concluded that, without this, she could not meet her burden to show that the defendants had constructive notice of the protruding metal rod and an opportunity to remedy the condition. Cochegrus appeals.

¶2 We conclude that under the circumstances here, the durable, nontransitory nature of the unsafe condition itself is evidence from which a factfinder could infer longevity. This is sufficient to create a uine dispute as to the length of time the condition existed. Based on this and the evidence regarding the noticeability of the condition, we conclude Cochegrus produced evidence in support of the disputed elements of her claim.

¶3 Accordingly, we reverse and remand.

## BACKGROUND

¶4 As Cochegrus walked across a park strip located between a sidewalk and a Herriman City street, she tripped, fell, and was injured.[2] At the time, she did not know what she tripped over, but

---

[1] A park strip is the area "between the sidewalk and the curb." *Gallegos v. Midvale City*, 492 P.2d 1335, 1336 (Utah 1972), *abrogated on other grounds by Scott v. Sch. Bd. of Granite Sch. Dist.*, 568 P.2d 746 (Utah 1977). It is "part of the public streets designed for the use of the public." *Ingram v. Salt Lake City*, 733 P.2d 126, 127 (Utah 1987) (per curiam).

[2] When reviewing a district court's grant of summary judgment, we view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation omitted). Accordingly, we view the facts in the light most favorable to Cochegrus.

her husband later returned to the area to investigate what had happened.[3]

¶5   Cochegrus's husband did not see the accident occur, but he testified that his wife later explained to him where she had fallen. While inspecting that area, he found a "rusted" metal rod extending approximately five inches from a hole in the ground. He testified that the metal rod was "not easy to see" initially because it was "covered by grass." But when he moved the grass aside, he noticed that it "looked like [the rod] had been hit . . . with the blade of a lawn mower." Cochegrus's husband surmised that his wife must have tripped over the metal rod because her foot was cut and the rod was the only object in the vicinity that could have inflicted that injury. Cochegrus's mother-in-law affirmed in a declaration that she saw Cochegrus trip over something in the park strip and that she had noticed the metal rod moments after Cochegrus fell.

¶6   Cochegrus herself later returned to inspect and photograph the park strip and protruding metal rod. She testified that "it looked as if [the rod] had been there for quite sometime [sic]" and that "when [she] tugged on it, [the rod] was securely fastened in the ground." She also stated that she had seen individuals mowing the lawn after her accident and that she would observe how they reacted to the metal rod. According to her testimony, "one gentleman went around it" and "another gentleman ran right over it." Cochegrus stated that the rod was "visible" "[w]hen the grass was freshly mowed."

¶7   Herriman City was not notified of the metal rod until seven months after the accident.[4] Upon notification, however, Herriman City immediately sent a streetlight technician to remedy the unsafe condition. The streetlight technician used a Sawzall[5] to cut off the portion of the rod that protruded from the hole and then filled in the hole with some dirt. He testified that

---

[3] Cochegrus's husband does not recall how soon after the accident he returned to examine the park strip.

[4] The record does not indicate who reported the condition to Herriman City.

[5] Sawzall is a brand of reciprocating saw.

the rod looked like it had been "hit multiple times" and that some of the nicks looked "rusted" while others were "clean." The streetlight technician agreed that "it was clear . . . somebody knew that . . . something was there, because somebody was hitting [the rod] with their lawnmower."

¶8    The Director of Operations for Herriman City also testified that it looked like the metal rod had been cut by a metal blade, stating that the nicks "appear to be from [a] lawn mower." According to him, the nicks had "oxidized" and were "not really fresh."

¶9    Herriman City acknowledged that it owns the park strip and that the metal rod was the end of a copper-clad stainless steel grounding rod from a nearby streetlight that a private contractor had installed for the city in 2006. The streetlight technician was surprised that "the ground rod was sticking up out of the ground," explaining that "[w]hoever did it didn't put [the rod] down deep enough." He theorized that the contractors may have been "going off . . . grade stakes" and it was possible "[i]f the grade stakes were saying [the road] was supposed to be two feet above, . . . they factored [that] they didn't need to pound the ground rod two more feet[] because the road was coming up."

¶10    Although Herriman City inspected the streetlight in 2006 when the final streetlight connections were done, the inspection report does not mention whether the rod was completely buried or protruding from the ground at the time of inspection.[6]

¶11    Cochegrus sued the defendants, arguing that they each breached a duty of care owed to her. She first alleged that Herriman City breached its nondelegable duty by "having the hazardous condition on its property." She then alleged that Rosecrest had a statutory duty under Herriman City Code section 7-6-1 to maintain the area where she tripped because it owns the private property abutting the park strip. Finally, she alleged that FCS had a duty because it had contracted with Rosecrest to

---

[6] The streetlight technician's theory about the rod protruding from the ground with the expectation that the ground would eventually be brought up to grade with the road could explain why the rod would have passed the inspection in 2006 even if it was sticking out of the ground.

maintain the park strip.[7] According to Cochegrus, Rosecrest and FCS breached their duties because they "knew or should have known about the protruding rusted rebar and should have done something to warn the public or the city or taken action to make the area safe."

¶12 All three defendants filed motions for summary judgment, which the district court granted. The court found that Cochegrus had not provided sufficient evidence to create a genuine factual dispute regarding the length of time that the unsafe condition had existed. The court ruled that this prevented her from meeting her burden to show that the hazard existed long enough that the defendants should have discovered and remedied it. Cochegrus timely appeals.

¶13 We exercise jurisdiction under Utah Code section 78A-3-102(3)(j).

**STANDARD OF REVIEW**

¶14 In reviewing a district court's grant of summary judgment, we review "a [district] court's legal conclusions and ultimate grant or denial of summary judgment for correctness." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation omitted) (internal quotation marks omitted). We apply an "objective standard" to determine whether a genuine factual dispute exists, which asks "whether reasonable jurors, properly instructed, would be able to come to only one conclusion, or if they might come to different conclusions, thereby making summary judgment inappropriate." *Heslop v. Bear River Mut. Ins. Co.*, 2017 UT 5, ¶ 20, 390 P.3d 314 (citation omitted).

---

[7] Although discovery is complete, Cochegrus never conclusively determined who mowed the park strip during the relevant timeframe. Herriman City disclosed that, while it contracts lawn-mowing services for some park strips, it did not do so for this one. And FCS denied mowing the park strip for Rosecrest. During his deposition, however, the Herriman City streetlight technician disclosed that he lived in Rosecrest during the relevant timeframe and that he had noticed the same company mowing both the interior lawns of Rosecrest and the park strip.

**ANALYSIS**

¶15   The district court granted summary judgment to the defendants because it concluded Cochegrus had not presented evidence showing that the unsafe condition existed long enough to infer that the defendants had constructive knowledge of the condition and an opportunity to remedy it.[8] Cochegrus disagrees, arguing that: (1) the district court should have treated the rod as a permanent unsafe condition rather than a temporary one, which would have eliminated the knowledge element; (2) she presented evidence showing the defendants had actual knowledge of the protruding rod, so she did not need to show constructive knowledge; (3) she did present sufficient evidence to show the condition had existed long enough that the defendants should have noticed and remedied it; and (4) the district court erred by not drawing reasonable inferences in her favor.

¶16   The defendants argue that the district court's summary judgment order was correct. As an alternative ground for affirmance, Rosecrest and FCS also argue that Cochegrus has not shown that they had a duty to maintain Herriman City's streetlight infrastructure. We address these issues in turn.

## I. PERMANENT VERSUS TEMPORARY UNSAFE CONDITIONS

¶17   Cochegrus first argues that the rod was a permanent unsafe condition and the district court should have analyzed her claim accordingly. In tort claims involving unsafe conditions on property, the applicable law depends on whether the condition at issue is deemed to have been temporary or permanent. Temporary unsafe conditions are those "such as a slippery

---

8   Summary judgment is proper "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." UTAH R. CIV. P. 56(a). Where the nonmoving party will bear the burden to prove the underlying legal theory at trial, it also bears the burden to produce evidence to support each essential element of a claim. *See Salo v. Tyler*, 2018 UT 7, ¶ 2, 417 P.3d 581. Under this circumstance, a moving party can show that it is entitled to judgment as a matter of law simply by establishing that the nonmoving party has not produced evidence on one of those elements. *See id.*

substance on the floor and usually where it is not known how it got there." *Allen v. Federated Dairy Farms, Inc.*, 538 P.2d 175, 176 (Utah 1975). In a negligence case involving a temporary unsafe condition, "fault cannot be imputed to the defendant so that liability results therefrom" unless the plaintiff shows (1) that the defendant "had knowledge of the condition, that is, either actual knowledge, or constructive knowledge because the condition had existed long enough that [the defendant] should have discovered it"; and (2) that after obtaining such knowledge, sufficient time elapsed that in the exercise of reasonable care the defendant should have remedied the dangerous condition. *Id.*

¶18 Unsafe conditions of a permanent nature include those, "such as: in the structure of a building, or of a stairway, . . . or in equipment or machinery, or its manner of use, which was created or chosen by the defendant (or his agents), or for which he is responsible." *Id.* In a negligence case involving a permanent unsafe condition, "where the defendant either created the condition, or is responsible for it, he is deemed to know of the condition; and no further proof of notice is necessary."[9] *Id.*

¶19 Cochegrus argues the district court should have deemed the unsafe condition here to be permanent because the rebar was installed as part of Herriman City's streetlight infrastructure. Accordingly, she asserts she should not be required to show that the defendants had knowledge of the condition.

¶20 But Cochegrus did not argue this in the district court. In fact, in opposing summary judgment, she conceded that "the hazard in this case was, admittedly, a temporary condition" and that she "d[id] not have evidence suggesting that [the defendants] created the condition."

¶21 Accordingly, this issue is not preserved. We have stated that notions of fairness and judicial economy dictate that appellate courts should not reverse a district court for reasons first raised on appeal. *See Patterson v. Patterson*, 2011 UT 68, ¶¶ 15–16, 266 P.3d 828. Because Cochegrus did not argue below that the rod was a

---

[9] Notably, however, we have explained that "in cases where temporary unsafe conditions are created by owners, the notice requirement also does not apply." *Jex v. JRA, Inc.*, 2008 UT 67, ¶ 26, 196 P.3d 576.

permanent unsafe condition, we decline to address this issue on the merits.

¶22 Consequently, we analyze Cochegrus's claim under the framework applicable to a temporary unsafe condition. To prevail at the summary judgment stage, she must have produced evidence in support of the contested elements of this claim: specifically, that the defendants had actual or constructive knowledge of the condition; and sufficient time elapsed that, in the exercise of reasonable care, they should have remedied the condition. *Allen*, 538 P.2d at 176.

¶23 Cochegrus contends that the defendants had actual notice of the unsafe condition. But she argues this for the first time on appeal. Before the district court, she argued only that the defendants had constructive knowledge of the rod's existence. To preserve an issue for appeal, a party must present it to the district court "in such a way that the court has an opportunity to rule on [it]," *Patterson*, 2011 UT 68, ¶ 12 (alteration in original) (citation omitted), and, "if appropriate, correct it," *id.* ¶ 15 (citation omitted). Cochegrus did not argue actual notice before the district court, so we conclude that she also failed to preserve this issue for appeal.

¶24 Accordingly, to show the district court erred, Cochegrus must demonstrate that she produced evidence that the defendants had constructive notice of the temporary unsafe condition. To do this, she must have shown that the unsafe condition existed long enough that the defendants "should have discovered it." *See, e.g., Kerr v. City of Salt Lake*, 2013 UT 75, ¶¶ 39–41, 322 P.3d 669 (citation omitted) (finding constructive notice of a sidewalk defect where a witness testified that he observed the condition a year and a half before the accident).

¶25 Both constructive notice and the second element on which Cochegrus bears the burden of proof—that sufficient time had elapsed that the defendants should have remedied the unsafe condition—require evidence regarding the length of time the condition existed. The district court found that Cochegrus's evidence on this point was insufficient to create a genuine dispute of fact. This is a fact-intensive inquiry and depends on the circumstances of each case. But, in all cases, a "mere hypothesis" that the condition "may have existed for some unknown length of time does not suffice." *Goebel v. Salt Lake City S. R. R. Co.*, 2004 UT 80, ¶ 25, 104 P.3d 1185. A plaintiff must offer some evidence of the

length of time the condition had existed prior to the injury. *Id.* ¶¶ 24–25. It is not enough to rely on "conjecture and speculation." *Jex v. JRA, Inc.*, 2008 UT 67, ¶ 21, 196 P.3d 576 (citation omitted).

¶26 However, a plaintiff is not required to prove the precise length of time that an unsafe condition existed. A plaintiff must show only that the condition "had been there for an appreciable time." *Id.* ¶ 19 (citation omitted). This means that under the circumstances, the condition existed long enough to be noticed. *See, e.g., Ohlson v. Safeway Stores, Inc.*, 568 P.2d 753, 754–55 (Utah 1977).

¶27 Whether the unsafe condition existed for an "appreciable" amount of time implicates both the length of time it has endured and its noticeability. A factfinder should consider any relevant factors in making this determination, such as the number of people using the premises, the frequency of use, the nature and prominence of the defect, its location on the premises, and its probable origin. *See Pollari v. Salt Lake City*, 176 P.2d 111, 117 (Utah 1947); *see also Hagan v. Caldor Dep't Stores, Inc.*, No. 89-7810, 1991 WL 8429, at *4 (E.D. Pa. Jan. 28, 1991).

¶28 Cochegrus argues that she did offer sufficient evidence of the length of time the condition existed, but that the district court did not make reasonable inferences in her favor as required at the summary judgment stage. *See Heslop v. Bear River Mut. Ins. Co.*, 2017 UT 5, ¶ 21, 390 P.3d 314. In support of this argument, Cochegrus points to specific language in the district court's oral ruling. While we see no problem with the statement Cochegrus challenges,[10] we clarify that the nature of an unsafe condition may

---

[10] The basis of Cochegrus's argument is a statement by the district court that the unsafe condition "may have existed—yesterday, it may have existed for years." Cochegrus reasons that because the court was required to draw all reasonable inferences in the light most favorable to her, it had to find that the metal rod existed for "years" rather than "yesterday." But Cochegrus misconstrues the district court's statement. When ruling on the summary judgment motion, the court stated, "I think the constructive notice cases are pretty tough. And I recognize that it's a hard burden to put on [p]laintiffs sometimes when there's a dangerous condition that may have existed—yesterday, it may have existed for years." This statement did not constitute a

(cont'd.)

itself be evidence of its age. *See, e.g., Blunt v. Ritz-Carlton Hotel Co.*, No. 15-6637, 2017 WL 1079970, at *4 (E.D. Pa. Mar. 21, 2017); *Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. Ct. 2001). With regard to the element of time, a transitory unsafe condition—such as a puddle of water or spilled food—will by nature do little to indicate the length of its existence.[11] In contrast, the nature of a durable, nontransitory unsafe condition like the protruding metal rod inherently suggests longevity. *See Neve*, 771 A.2d at 791 (stating that the "relative durability of the defect comprises a related factor" to deciding whether it is reasonable to impute knowledge of the unsafe condition to a defendant).

¶29   The evidence here that the metal rod was firmly fixed in the ground supports an inference that it had likely presented a hazard for some time. The metal rod is a grounding rod that was installed and inspected as part of Herriman City's streetlight infrastructure in 2006. The streetlight technician testified that the rod is "10 feet long," bound "10 feet into the ground," and "connected to a J box and . . . stainless steel meter cabinet." According to Cochegrus, she tugged on the rod and discovered that "it was securely fastened in the ground." Indeed, the streetlight technician had to use a Sawzall to remove the section of the metal rod jutting from the hole in the ground. Based on its durable nature, it is unlikely that the metal rod suddenly sprung from the ground. Instead, it is reasonable to infer that the rod was

---

finding that the rod may have protruded from the ground for years or for one day. Rather, the court was commenting more generally on the challenge of proving constructive notice when the origin of the dangerous condition is unknown. We reject Cochegrus's contention that this was an instance of the district court failing to draw inferences in her favor.

[11] *See Jex*, 2008 UT 67, ¶ 3 (puddle of water); *Goebel v. Salt Lake City S. R.R. Co.*, 2004 UT 80, ¶¶ 4, 25, 104 P.3d 1185 (gap between field panels at railroad crossing that "may have formed suddenly by being scraped or struck by . . . a snow plow"); *Fishbaugh v. Utah Power & Light*, 969 P.2d 403, 404 (Utah 1998) (temporary streetlight outage); *De Weese v. J.C. Penney Co.*, 297 P.2d 898, 899–900 (Utah 1956) (slippery floor); *Porter v. Farmington City Corp.*, 2014 UT App 12, ¶ 2, 318 P.3d 1198 (hole in grass); *Price v. Smith's Food & Drug Ctrs., Inc.*, 2011 UT App 66, ¶ 1, 252 P.3d 365 (puddle of water).

either installed incorrectly as suggested by the streetlight technician or that it emerged over time.

¶30  This conclusion is further bolstered by testimony that the metal rod was exposed to the elements long enough that it appeared "rusted" or "oxidized." In addition, several witnesses noted that it appeared as though the rod had been nicked with a metal blade like that of a lawnmower and that some of the nicks were "not really fresh." It could be argued that oxidation and nicks on the rod do not indicate precisely when the rod became a trip hazard, and that these characteristics could have materialized in the seven-month period between the accident and when the unsafe condition was reported to Herriman City. Putting aside that this argument does not give Cochegrus the benefit of all reasonable inferences, we conclude that the durable, nontransitory nature of the grounding rod itself is enough to give rise to an inference that it existed for a substantial amount of time. This is sufficient to create a dispute of fact regarding how long the unsafe condition existed.

¶31  Whether this is sufficient to support a claim of constructive notice, in other words that this was long enough that the defendants should have discovered the condition, also requires consideration of evidence relevant to the condition's noticeability, such as its prominence, visibility, and location. *See Pollari*, 176 P.2d at 117. A trip hazard in a field of naturally tall grass with few passersby must be distinguished from a rod that protrudes from regularly mowed grass in a residential area.[12]

---

[12] Regarding Herriman City, we have stated that whether a city "charged with the duty of supervising miles of streets and sidewalks" has "exercised proper vigilance to discover defects depends on the element of time, the nature and extent of the defect, its *prominence in location* and other factors." *Pollari v. Salt Lake City*, 176 P.2d 111, 117 (Utah 1947) (emphasis added) (holding that, under the circumstances, a small hole that had existed on a *main* sidewalk in a *residential area* for about two years presented a question of constructive notice properly left to the jury); *see also Porter v. Farmington City Corp.*, 2014 UT App 12, ¶¶ 11, 13, 318 P.3d 1198 (affirming summary judgment in favor of defendants where the parties stipulated that a large sink hole covered by grass could not have been discovered "by reasonable visual
(cont'd.)

¶32 We conclude that Cochegrus produced sufficient evidence in support of a constructive notice theory to preclude summary judgment. The evidence presented here suggests that the metal rod was a prominent condition in a residential, regularly maintained park strip. There appears to be some inconsistent testimony about how far the rod extended from the grass,[13] but at the summary judgment phase we must view the facts in the light most favorable to Cochegrus. Under that standard, we accept the streetlight technician's testimony that the rod protruded approximately five inches above the grass. This testimony is supported by a photograph in the record. Another photograph illustrates a contrast between the dark metal rod and the surrounding green grass. And while Cochegrus's husband testified that the rod was obscured by tall grass on the day he returned to survey the area, it is reasonable to infer that the rod was prominently poised when the park strip was mowed. Indeed, Cochegrus's mother-in-law stated that she saw the metal rod moments after Cochegrus tripped and fell.

¶33 Affording Cochegrus the benefit of all reasonable inferences, we conclude that a jury could reasonably infer from the durable, nontransitory nature of the metal rod that it had existed for a significant period of time. Along with evidence of its prominence in a regularly maintained residential area, Cochegrus has produced evidence on the disputed elements of her claim—that the defendants had constructive knowledge of the condition and sufficient time to remedy it. Accordingly, we conclude

---

inspection of the area" (emphasis omitted)). While factors related to noticeability are relevant to all defendants, this precedent establishes that where a city is a defendant, its responsibility for supervising premises throughout the city limits should be considered in determining whether it should have discovered the unsafe condition in question.

[13] We note that the inconsistencies may have resulted from the relevant question being posed in different ways. For example, Cochegrus's husband was asked "how far the rod came out above the soil level of the grass." But the streetlight technician was asked, "How far above the grass did th[e] rod stick up?" These questions differ in where they asked the deponent to begin measuring the length of the protrusion.

summary judgment is not available to the defendants on this basis.

## II. DUTY

¶34   Rosecrest and FCS argue as an alternative basis for affirmance that they owed no duty to Cochegrus.[14] Because the district court granted summary judgment on the grounds discussed above, it did not reach this issue.

¶35   Rosecrest and FCS have assumed here that they had a statutory duty under Herriman City Code section 7-6-1 to maintain the park strip where Cochegrus fell. In relevant part, the city statute provides: "It shall be the duty of each owner of real property abutting or fronting upon any street, highway or alley within the city, to repair and maintain in good condition all . . . park strips . . . across or immediately abutting their property." But they argue that even assuming such a duty, they did not have a duty or even a right to repair or remove the grounding rod, which is part of Herriman City's streetlight infrastructure.

¶36   It is within our discretion "to affirm [a] judgment on an alternative ground if it is apparent in the record." *Madsen v. Wash. Mut. Bank*, 2008 UT 69, ¶ 26, 199 P.3d 898. For a legal theory "[t]o be 'apparent on the record,' '[t]he record must contain sufficient and uncontroverted evidence supporting the ground or theory to place a person of ordinary intelligence on notice that the prevailing party may rely thereon on appeal.'" *Francis v. State, Utah Div. of Wildlife Res.*, 2010 UT 62, ¶ 10, 248 P.3d 44 (second alteration in original) (citation omitted).

¶37   Rosecrest and FCS argue that *Hill v. Superior Property Management Services, Inc.*, supports their argument that they owed Cochegrus no duty. *See* 2013 UT 60, 321 P.3d 1054. But in *Hill*, we analyzed whether a contracted property management company had a duty to the plaintiff under various theories of premises liability. *Id.* ¶¶ 19–20. We did not have before us a city statute explicitly conferring a duty upon the defendant in that case to

---

[14] Herriman City does not join in this argument. It accepts that it had a nondelegable duty to exercise reasonable care in maintaining its park strips in a reasonably safe condition for pedestrians.

"repair and maintain in good condition" the area on which the injury occurred. So *Hill* does not address the limits of such a statute.

¶38   Rosecrest and FCS have not provided any additional authority or analysis as to why the statutory duty to maintain the park strip did not encompass a duty to exercise reasonable care to remediate any danger posed by the protruding grounding rod. While we acknowledge Rosecrest and FCS's argument that they did not have a right to repair Herriman City's streetlight infrastructure, they do not explain why that is dispositive here. Repairing the streetlight was not necessarily required of them. As Cochegrus suggests, they could have notified Herriman City of the hazard or otherwise taken action to warn unwitting pedestrians of the danger. Duty requires only the exercise of reasonable care.

¶39   Rosecrest and FCS also contend that as a factual matter, they did not mow the park strip where Cochegrus fell. But even assuming this is true, while it may be relevant to notice, it is not relevant to the legal question of whether they had a duty to Cochegrus. Rosecrest and FCS have not disputed that the Herriman City Code imposes a duty on abutting property owners to maintain park strips, and their briefing assumed *arguendo* that the statute applies to them. And while Herriman City agrees that it performs this task in some locations, without definitive evidence that Herriman City had somehow relieved Rosecrest of its duty to maintain the park strip here, Rosecrest and FCS cannot prevail on summary judgment by simply alleging that they did not mow this area.

¶40   We conclude that the record before us does not contain sufficient evidence to affirm the district court on the alternative basis urged by Rosecrest and FCS.[15]

## CONCLUSION

¶41   We conclude that the durable, nontransitory nature of the unsafe condition here was evidence from which a jury could infer longevity. This is sufficient to create a genuine dispute

---

[15] We have not been presented with any additional arguments related to the existence or scope of any duty Rosecrest or FCS may have owed Cochegrus. This opinion should not be construed to reach such issues.

regarding the length of time the unsafe condition existed. In conjunction with evidence relevant to the noticeability of the metal rod, Cochegrus produced evidence in support of the contested elements of her claim.

¶42 We therefore reverse the order of summary judgment and remand to the district court for further proceedings.

―――――――